**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Laszlo POMAZI, Defendant–Appellant.**

**No. 86–5129.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 4, 1988.

Decided June 29, 1988.

---

W. Michael Mayock, Los Angeles, Cal., for defendant-appellant.

Paul L. Seave, Asst. U.S. Atty., Criminal Div., Los Angeles, Cal., for plaintiff-appellee.

Before BRUNETTI and THOMPSON, Circuit Judges, and PRO, District Judge.*

DAVID R. THOMPSON, Circuit Judge:

Pursuant to a plea bargain, Laszlo Pomazi ("Pomazi") pleaded guilty to a Second Superseding Information ("Information") charging him with two counts of mail fraud (18 U.S.C. § 1341). On Count 1, the district court sentenced Pomazi to two years imprisonment and ordered him to make restitution of $64,229. On Count 2, the court placed Pomazi on five years' probation. One of the conditions of probation was that Pomazi pay the $64,229 ordered on Count 1. Pomazi appeals from his sentence on the grounds that (1) the court failed to inform him about the possibility of restitution prior to entering his plea; (2) the district court erred in ordering restitution when no specific dollar amount of loss was alleged in the Information and his plea bargain was silent as to restitution; and (3) the government breached its plea agreement by recommending that restitution be paid. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

I

FACTS

Pomazi pleaded guilty to conducting a typical "boiler room" operation. The scheme operated essentially as follows: Pomazi and one or two cohorts would contact by telephone owners of small businesses located outside California and falsely advise them that they had won a valuable prize (either a car, a boat or a $5,000 cashier's check). The targeted victim would then be told that, in order to avoid paying a substantial federal tax on the prize, he or she should purchase a pen and pencil set from the caller's company for between $399 and $500. When the victim agreed, a pen and pencil set, worth much less than this stated amount, would be mailed to the victim who would then pay for the pen and pencil set with a postal money order mailed to the caller's fictitious company at a rented postal box. No one ever received a prize. According to the government, the scam grossed $180,000 over a three-month period.

The Information alleged two mailings involving one victim. Neither the Information nor the plea agreement contained any mention of the dollar amount of victim losses. No mention was made by the government or by the court during the plea proceedings that Pomazi might be required to pay restitution. On March 26, 1986, after his plea was entered, Pomazi received the government's sentencing memorandum. In it, the government recommended that restitution of $180,000 be ordered. In addition, the United States Probation Department prepared and submitted to the court a presentence report which recommended restitution. The report stated that Pomazi had expressed to his probation officer a desire to make restitution, although no amount was mentioned.

---

* Honorable Philip M. Pro, United States District Judge for the District of Nevada, sitting by designation.

At the initial scheduled sentencing hearing Pomazi challenged the government's $180,000 restitution figure. The district court continued the hearing so that a U.S. Postal Inspector, who had identified the victims and tallied their losses, could be present to testify. At the continued sentencing hearing, the government limited its request for restitution to $64,229, the amount of loss attributable to those victims the government was able positively to identify by name and address. The district court fixed the restitution amount at $64,-229, and that is what Pomazi was ordered to pay.

## II

## DISCUSSION

### A. *Standard of Review*

■ We review the legality of a criminal sentence de novo. *United States v. Whitney*, 785 F.2d 824, 825 (9th Cir.1986), *as amended*, 838 F.2d 404 (1988). Sentencing that falls within statutory limits, however, is left to the sound discretion of the district court and is reviewed for an abuse of discretion. *United States v. Koenig*, 813 F.2d 1044, 1046 (9th Cir.1987).

### B. *Imposition of Restitution*

Before resolving Pomazi's contention that he was ordered to pay restitution in an improper amount, we must first determine whether the district court erred in ordering restitution at all. Our threshold inquiry is whether restitution was ordered under the Federal Probation Act, 18 U.S.C. § 3651 ("FPA") or under the Victim and Witness Protection Act, 18 U.S.C. §§ 3579, 3580 ("VWPA").[1]

The district court did not state under which of these two statutes it ordered restitution. However, probation was not granted on Count 1. Therefore, the $64,229 restitution order which was made part of the sentence on Count 1 could only have been imposed under the VWPA. This is so because the FPA only permits an order for restitution if probation is granted. 18 U.S.C. § 3651 ("While on probation and among the conditions thereof, the defendant ... [m]ay be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had"). The VWPA is not so limited. Restitution under the VWPA can be ordered as part of a sentence, or as a condition of probation. "The court ... may order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of the offense." 18 U.S.C. § 3579(a)(1). *See also United States v. Signori*, 844 F.2d 635, 640 (9th Cir.1988) (the VWPA was enacted primarily "to fill a sentencing gap left by section 3651 ...").

■ Thus, the court properly ordered restitution under the VWPA on Count 1, and when it made payment of that restitution a condition of Pomazi's probation on Count 2 it did what it was required to do under the VWPA as set forth in 18 U.S.C. § 3579(g): "If such defendant is placed on probation or paroled under this title, any restitution ordered under this section shall be a condition of such probation or parole."

### C. *Notice of Restitution*

It is undisputed that neither the district court nor the prosecution advised Pomazi, prior to the time he entered his plea, that restitution might be ordered. Fed.R. Crim.P. 11(c)(1) requires a district court, before accepting a guilty plea, to advise the defendant that, among other things, "the court may also order the defendant to make restitution to any victim of the offense...." In addition to this statutory requirement, we have stated that, in the plea bargain context, "where the defendant foregoes the right to trial as the condition of his plea, he must know to what he pleads." *Whitney*, 838 F.2d at 405.

---

**1.** Pursuant to the Comprehensive Crime Control Act of 1984, 18 U.S.C. § 3579 is renumbered as 18 U.S.C. § 3663, effective November 1, 1987. Pub.L. No. 98-473, Title II, c. II § 212(a)(1), Oct. 12, 1984, 98 Stat. 1987, as amended by Pub.L. No. 99-217, § 4, Dec. 26, 1985, 99 Stat. 1728.

This legislation also repeals, effective November 1, 1987, the provision for restitution set forth in 18 U.S.C. § 3651. Pub.L. No. 98-473, Title II, c. II, § 212(a)(2), Oct. 12, 1984, 98 Stat. 1987, as amended by Pub.L. No. 99-217, § 4, Dec. 26, 1985, 99 Stat. 1728.

*See also Boykin v. Alabama,* 395 U.S. 238, 244, 89 S.Ct. 1709, 1712, 23 L.Ed. 2d 274 (1969) (defendant must have "a full understanding of what [his] plea connotes and of its consequence."). Pomazi argues that the restitution portion of his sentence was illegally imposed because the district court did not advise him that restitution might be ordered, the Information made no mention of the dollar amount of victim losses, and his plea agreement was silent as to restitution.

■ The district court advised Pomazi at the Rule 11 hearing, and before he entered his plea, that he could be required to pay a fine of up to $500,000. As it turned out, the court ordered Pomazi to pay $64,229 in the form of restitution, rather than a fine. Pomazi could not have been surprised or prejudiced by the imposition of the $64,229 as restitution in light of his potential liability for $500,000. *See United States v. Fentress,* 792 F.2d 461, 466 (4th Cir.1986) (failure to advise defendant at plea proceedings of possible restitution order deemed harmless in light of larger potential maximum fine). Any error in failing to advise Pomazi of the possibility of a restitution order did not affect his substantial rights under these circumstances. *See* Fed.R.Crim.P. 11(h) ("Any variance from the procedures required by [Rule 11] which does not affect substantial rights shall be disregarded.").

## D. *Amount of Restitution*

Pomazi contends that because his plea agreement was silent as to restitution, the amount of restitution the court could have ordered was limited to the amount of victim losses set forth in the Information. Only one victim was listed in the Information, and no amount of loss was stated.

The legislative history of the VWPA demonstrates that Congress sought to implement a system by which "the wrongdoer is required to the degree possible to restore the victim to his or her prior state of well-being." S.Rep. No. 97–532, 97th Cong., 2d Sess. 30 *reprinted in* 1982 U.S. Code Cong. & Admin.News 2515, 2536 ("Senate Report"). "[T]he court in devising just sanctions for adjudicated offenders, should en-

sure that the wrongdoer make goods [sic], to the degree possible, the harm he has caused his victim." *Id.* Section 2 of the VWPA expressly states that one of Congress' purposes in enacting the legislation was "to ensure that the Federal Government does all that is possible within limits of the available resources to assist victims and witnesses of crime without infringing on the constitutional rights of the defendant." Pub.L. No. 97–291, § 2, 96 Stat. 1248 (18 U.S.C. § 1512 note). The Senate Report acknowledged an unfortunate trend within federal criminal courts by which restitution had become reduced "from being an inevitable if not exclusive sanction to being an occasional afterthought." Senate Report at 2536. In an effort to encourage more frequent imposition of restitution, the VWPA requires a district court to state its reasons on the record any time it decides not to order full restitution. 18 U.S.C. § 3579(a)(2).

Given the VWPA's objective of providing full compensation to victims, and the language of the Act which expressly authorizes the sentencing court to order a defendant to "make restitution to *any victim of the offense*" (18 U.S.C. § 3579 (emphasis added)), we do not believe Congress intended to limit the amount of restitution to amounts set forth in an indictment or information. For example, the victim's losses under section 3579(b) may include (1) the cost of necessary medical and related professional services, as well as non-medical care and treatment, (2) the cost of therapy and rehabilitation, (3) income loss, and (4) funeral and related expenses when the crime results in the death of the victim. It is unlikely these losses would be included in the indictment or information charging the crime to which they relate. Moreover, the *Advisory Committee note* to Fed.R. Crim.P. 11(c)(1) explains why a district court cannot advise a defendant of the exact amount of restitution at the time a plea is entered:

Because [the VWPA] contemplates that the amount of the restitution to be ordered will be ascertained later in the sentencing process, this amendment to

Rule 11(c)(1) merely requires that the defendant be told of the court's power to order restitution. The exact amount or upper limit cannot and need not be stated at the time of the plea.

Fed.R.Crim.P. 11(c)(1).

■ In view of the foregoing considerations, we hold that the sentencing court's determination of the proper amount of restitution is not limited by the amount of victim losses alleged in the charging instrument, so long as the defendant is given ample opportunity to contest the restitution amount, the amount of restitution ordered is supported by the evidence, and the amount is judicially established. *See United States v. Black,* 767 F.2d 1334, 1343 (9th Cir.), *cert. denied,* 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 557 (1985); *Phillips v. United States,* 679 F.2d 192, 194–95 (9th Cir.1982); *United States v. Hill,* 798 F.2d 402, 406 (10th Cir.1986) ("[I]n determining the amount of loss to a victim for purposes of awarding restitution under the VWPA, a district court is not limited either by the amount specified in the indictment or the specific transactions alleged in the indictment."). *See also United States v. Youpee,* 836 F.2d 1181, 1183 (9th Cir.1988).[2]

Pomazi's final contention regarding the amount of restitution concerns the *number* of victims to whom restitution is to be made. Although the Information described a fraudulent scheme of considerable magnitude, it listed only two mailings to and from one victim. Pomazi argues that the court may not go outside the Information to determine victims not named in the Information. We do not read the VWPA this narrowly.

Section 3579(a)(1) permits restitution to "*any* victim of the offense" (emphasis added). The "offense" Pomazi was charged with was "mail fraud" under 18 U.S.C. § 1341, which encompasses "[a] scheme or artifice to defraud, [and to obtain] money ... by means of false or fraudulent pretenses, representations or promises...."

In *Phillips,* 679 F.2d at 196, we agreed with the reasoning of the district court that, in cases involving mail fraud, " 'offense' includes the fraudulent scheme alleged as an element of the offense and restitution may be ordered in an amount caused by the entire scheme rather than only in the amount caused by a particular mailing." *See also United States v. Van Cauwenberghe,* 827 F.2d 424, 434 (9th Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988) ("nothing in the language of § 3651 requires an interpretation 'that restitution may not be ordered to a party not named in the count for which probation was ordered.' ") (quoting *United States v. Orr,* 691 F.2d 431, 434 (9th Cir. 1982)). As the Seventh Circuit has stated, in cases which involve a continuing scheme to defraud, "it is within the power of the court to require restitution of any amount up to the entire illicit gain from such a scheme, even if only some specific incidents are the basis of the guilty plea." *United States v. Davies,* 683 F.2d 1052, 1055 (7th

---

**2.** In *Youpee,* 836 F.2d at 1183 n. 3, we noted an apparent conflict in this circuit between cases which had considered the question whether the court could order restitution in an amount greater than that set forth in an indictment or in a plea agreement. The case which caused the apparent conflict was *United States v. Whitney,* 785 F.2d 824 (9th Cir.1986), *as amended,* 838 F.2d 404 (1988). Our case bears some striking similarity to *Whitney.* Here, as in *Whitney,* the Information makes no mention of the dollar losses suffered by victims as a result of Pomazi's fraudulent scheme, and the plea agreement does not address restitution. *See Whitney,* 785 F.2d at 824. We held in *Whitney* that in such a situation the district court imposed an illegal sentence when it ordered the defendant to pay restitution as a condition of probation. *Whitney, as amended,* 838 F.2d at 405. We stated in

*Youpee* that *Whitney* apparently conflicted with our decision in *Phillips v. United States,* 679 F.2d 192, 194 (9th Cir.1982), as well as with "holdings in three other circuits." *Youpee* at 1183 n. 3.

We need not resolve the apparent conflict created by *Whitney. Whitney* was decided under the old FPA, not under the VWPA. *See Whitney, as amended,* 838 F.2d at 404 ("This case is not decided under the Victim Witness Protection Act (see particularly 18 U.S.C. § 3580(d)) that sets forth in detail procedures for issuing orders of restitution. Its effective date was January 1, 1983. All of the acts alleged in the indictment [in *Whitney*] occurred between 1977 and 1981."). Moreover, in the present case, before Pomazi entered his plea, he was advised by the court that he could be ordered to pay a fine of up to $500,000.

Cir.1982). *See also Hill*, 798 F.2d at 406 ("for purposes of awarding restitution under the VWPA, a district court is not limited either by the amount specified in the indictment *or the specific transactions alleged in the indictment.*") (emphasis added).

■ We hold that when the crime charged involves a scheme to defraud, a sentencing court may order restitution paid to victims of the entire scheme even though all of them are not named in the indictment or information. The amount of restitution, however, must be definite and limited by the amount actually lost by the victims. *See United States v. Mischler*, 787 F.2d 240, 245 (7th Cir.1986). The court must be able positively to identify each victim to whom restitution is due and, in addition, the defendant must be given the opportunity to refute the amount ordered. *See United States v. Keith*, 754 F.2d 1388, 1392 (9th Cir.1985) ("due process is satisfied by affording the defendant an adequate opportunity to present his objections [to an order for restitution].") Finally, the amount of restitution ordered must be judicially established. *Black*, 767 F.2d at 1343; *United States v. Gering*, 716 F.2d 615, 625 (9th Cir.1983).

■ Before sentencing Pomazi, the district court conducted a hearing at which the government's case agent, a U.S. Postal Inspector, testified as to losses sustained by victims of Pomazi's mail fraud scheme. This evidence demonstrated that 141 victims had been positively identified through postal money orders sent to Pomazi's fictitious businesses and deposited in one of his bank accounts, for a total loss of $64,229. Several of these victims were personally contacted and interviewed concerning their losses. Each verified the details of the fraudulent scheme. Pomazi cross-examined the Postal Inspector, and presented his objections to the government's evidence. We conclude that the government met its burden in establishing the $64,229 restitution amount.

### E. Breach of the Plea Agreement

Pursuant to the plea agreement, the government agreed to dismiss the Indictment and the First Superseding Indictment in exchange for Pomazi's guilty plea to the Second Superseding Information. The agreement further provided that there was no agreement or understanding between the parties with respect to the sentence. Pomazi contends that the government breached the plea agreement by recommending to the sentencing court that he be required to pay restitution. According to Pomazi, despite the fact that the plea agreement was silent with respect to sentencing, the government's request for $180,000 in restitution (subsequently reduced to $64,229) amounted to a material change in the plea agreement.

■ A plea bargain, being contractual in nature, is subject to contract law standards. *United States v. Krasn*, 614 F.2d 1229, 1233 (9th Cir.1980). "In determining whether a plea agreement has been broken, courts look to what was reasonably understood by [the defendant] when he entered his plea of guilty. If disputed, the terms of the agreement will be determined by objective standards." *United States v. Travis*, 735 F.2d 1129, 1132 (9th Cir.1984) (quotations and citation omitted).

In *United States v. Kamer*, 781 F.2d 1380 (9th Cir.), *cert. denied* 479 U.S. 819, 107 S.Ct. 80, 93 L.Ed.2d 35 (1986), we held that imposition of over one million dollars in restitution was "material enough" to demand express inclusion in the plea agreement, and failure to do so amounted to a breach of the agreement. *Kamer*, 781 F.2d at 1389. While the facts in *Kamer* may have warranted such a result, those of the present case do not. In *Kamer*, the district court indicated to the defendant on several occasions that restitution would *not* be ordered. *Id.* In addition, the defendant told the district judge, after signing the plea agreement, that it was his understanding that restitution would not be imposed. *Id.* at 1388–89.

■ In the present case, neither the court or the prosecution suggested that restitution would not be ordered. Pomazi was advised by the court, before he entered

his plea, that he faced a potential $500,000 fine by pleading guilty. As it turned out, he was only required to pay $64,229. Significantly, the plea agreement in *Kamer* expressly provided for the maximum sentence to be imposed, but was silent regarding restitution. The plea agreement Pomazi entered into contained nothing whatsoever regarding sentencing. The government's recommendation for restitution did not breach the terms of the plea agreement.

### III

### CONCLUSION

Before he entered his plea, Pomazi was advised by the court that he could be required to pay a fine of up to $500,000. In this circumstance, the court's failure to advise Pomazi that he might be ordered to pay restitution, subsequently ordered in the sum of $64,229, did not affect Pomazi's substantial rights. Fed.R.Crim.P. 11(h). In determining the amount of victim losses for restitution purposes under the VWPA, the sentencing court is not limited by the amount of losses specified in the charging instrument. In cases involving a scheme to defraud, the court may order restitution, under the VWPA, to any victim of the entire scheme even if not alleged in the indictment or information. The amount of restitution, however, must be definite and limited by the amount actually lost by the victims. The court must be able positively to identify each victim, and the amount of restitution must be judicially established in a proceeding in which the defendant has the opportunity to challenge the amount of restitution being sought. These safeguards were complied with in the present case. The government did not breach the plea agreement by recommending restitution.

AFFIRMED.