**UNITED STATES of America, Appellee,**

v.

**Orlando BERRIOS,**
**Defendant–Appellant.**

No. 349, Docket 88–1280.

United States Court of Appeals,
Second Circuit.

Argued Nov. 16, 1988.

Decided Feb. 13, 1989.

Peter S. Jongbloed, Asst. U.S. Atty., New Haven, Conn. (Stanley A. Twardy, U.S. Atty., D.Conn., New Haven, Conn., on the brief), for appellee.

Sarah A. Chambers, Asst. Federal Public Defender, New Haven, Conn. (Thomas G. Dennis, Federal Public Defender, D.Conn., on the brief), for defendant-appellant.

Before FEINBERG, MESKILL, and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Orlando Berrios appeals from an order of the United States District Court for the District of Connecticut, Warren W. Eginton, Judge, denying his motion for correction of sentence, entered after his plea of guilty to one count of theft of mail, in violation of 18 U.S.C. § 1709 (1982). Berrios's sentence included (1) a one-year jail term, execution of which was suspended, (2) a three-year term of probation, and (3) an order pursuant to the Victim and Witness Protection Act, 18 U.S.C.A. § 3663 (West 1985 & Supp.1988) ("VWPA" or the "Act"), requiring him to pay $2,905 as restitution for amounts he admitted he had stolen. On appeal, he argues that the district court erred in ordering restitution in an amount higher than that charged in the information or reflected in his plea agreement. Finding his arguments to be without merit, we affirm the order of the district court.

## BACKGROUND

In September 1987, Berrios, a former United States Postal Service employee, was charged in a one-count information with having stolen from the mail a United States Treasury check in the amount of $1,349. In a plea agreement with the government, Berrios agreed, *inter alia*, to plead guilty to that count in complete satisfaction of any federal criminal liability he might have for theft of negotiable instruments while he was a Postal Service employee. Without specifying an amount, the plea agreement advised Berrios that the court might order him to "make restitution to the victims of this offense" under the provisions

of the VWPA in the amount of the value of the stolen property.

On September 30, 1987, a plea hearing was held. The government described its evidence against Berrios, which included his statement to a postal inspector that during a three-month period in 1986, he had taken 14 or 15 federal and state checks from the New Haven Post Office, one of which was the check described in the information. The government informed the court that nine of the stolen checks, including the one described in the information, had been paid by the New Haven Savings Bank (the "Bank"); the Bank's losses on account of those nine checks totaled $2,905. Pursuant to § 3663, the government sought restitution in that amount.

Berrios's counsel acknowledged that $2,905 was the total of the recovered stolen checks but disputed the court's authority to require restitution in this amount, stating as follows:

> MS. CHAMBERS: ... I would agree that the total amount missing was two thousand, nine hundred and five dollars but the amount in the information was one thousand, three hundred and forty-nine dollars and my reading of the statutes that govern restitution limit the Court's authority to impose restitution to the amount contained in the offense for which the person is found guilty so I believe that this plea agreement effectively limits the Court's authority to order restitution in excess of thirteen, forty-nine.

(Plea Transcript at 18.) The court indicated that it believed it had the authority under the Act to order restitution in the higher amount but instructed the government to research the matter further prior to sentencing. The court warned Berrios that it might order restitution in the amount of $2,905. Immediately following this colloquy, Berrios pleaded guilty to the one-count information.

The sentencing hearing was held on November 13, 1987. The court began by stating that it was not planning to sentence Berrios to incarceration because it appeared that he had a good attitude: "You seem to have genuine remorse which is one of the major factors and you have tried to cooperate and the restitution will be important ...." (Sentencing Transcript ("Tr.") 4.) The court then invited the attorneys to comment on the permissible maximum amount of the restitution order.

The government took the position that the court had the power to order restitution in the entire amount requested. Berrios's attorney again stated the position that the Act forbade an order for restitution in any amount higher than that charged in the indictment or information unless the defendant agreed to a higher amount in a "fully bargained" plea agreement specifying that amount. After acknowledging that the check whose theft was charged in the information was included in the $2,905, Berrios's counsel also stated as follows:

> ... I would just like to add that when Mr. Berrios was interviewed by the agents back in, I believe it was October of 1986, he fully knowledged [sic] guilt and acknowledged a desire or expressed a desire to make restitution and he will certainly abide by whatever order this Court imposes and I am not trying to tell the Court that he doesn't feel that he has a moral obligation to pay back $2,905, but I just think it's important to clarify that I think the Court's authority is limited to the thirteen, forty-nine and I think that whatever the Court does, he is not precluded from paying back the full amount.

(Tr. 8–9.)

After asking Berrios whether he wished to make any statement to the court before imposition of sentence, and receiving a negative response, the court stated:

> All right, Miss Chambers has said it very well for you on the restitution point and I think she's made another statement which is very important and that's your moral obligation. Now, I'm going to order the full restitution and it may be that if you and she feel it appropriate you might appeal it to the Second Circuit to find out if I've exceeded my jurisdiction but I think that morally it certainly

is the proper position to take and I'm pleased that you're taking it.

(Tr. 10.) The court proceeded to sentence Berrios as indicated above, ordering him to pay restitution in the amount of $2,905.

Berrios did not appeal from the judgment imposing sentence but moved in the district court for correction of his sentence, arguing that the court had no power to order him to pay restitution in an amount higher than the $1,349 charged in the information. The court denied the motion without comment. On Berrios's motion for reconsideration, the court adhered to its denial, stating that "the court is not subject to any limitations under the VWPA in ordering restitution." This appeal followed.

## DISCUSSION

■ On appeal, Berrios renews his contention that he is entitled to a reduction of his sentence, arguing that he had neither conceded liability for, nor agreed to make restitution of, any amount higher than the sum charged in the information to which he pleaded guilty, and hence the court had no power to order restitution in a higher amount. For the reasons below, we disagree.

Two sets of statutory provisions relating to restitution were in effect at the time Berrios committed his offense: (1) the Federal Probation Act, 18 U.S.C. § 3651 *et seq.* (1982) ("Probation Act") (repealed effective November 1, 1987), which was applicable to offenses committed prior to November 1, 1987, and (2) the VWPA, which was enacted in 1982 and became effective with respect to offenses committed on or after January 1, 1983. The district court sentenced Berrios under the VWPA provisions.

The principal pertinent provision of the VWPA, originally numbered § 3579, renumbered § 3663 effective November 1, 1987, provides that "[t]he court, when sentencing a defendant convicted of an offense under this title[,] ... may order ... the defendant [to] make restitution to any victim of such offense." 18 U.S.C.A. § 3663(a) (West Supp.1988). As to the amount of restitution, § 3663(b) provides, in part, as follows:

(b) The order may require that such defendant—

(1) in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense—

(A) return the property to the owner of the property or someone designated by the owner; or

(B) if return of the property under subparagraph (A) is impossible, impractical, or inadequate, pay an amount equal to the greater of—

(i) the value of the property on the date of the damage, loss, or destruction, or

(ii) the value of the property on the date of sentencing,

less the value (as of the date the property is returned) of any part of the property that is returned.

18 U.S.C.A. § 3663(b)(1) (West 1985). The Act thus provides, in essence, that when an offense causes property loss, the court may, in sentencing the defendant for that offense, order the defendant to pay the victim of that offense the value of the loss. The reference in the above valuation section to "the offense" and the repeated references to "the" property provide some facial support for the proposition that the maximum amount of restitution that the court may order is the amount of loss resulting from the very offense for which the defendant is being sentenced, and perhaps for the proposition that the charging instrument establishes the maximum amount of that loss.

■ Yet, had this been Congress's intent, it would have been a simple matter for the statute to state plainly that the sentencing court may not order restitution for property loss in any amount higher than the amount of loss specified in the count or counts on which the defendant is convicted. The Act does not so specify, however, and two of its procedural provisions suggest a contrary intent. First, § 3664(a) provides that "[t]he court, in determining ... the amount of such restitution, shall *consider* the amount of the loss

sustained by any victim as a result of the offense," and that it shall consider *"such other factors as the court deems appropriate."* 18 U.S.C.A. § 3664(a) (West 1985) (emphasis added). Under subsection (a), therefore, even the amount of the victim's loss, which of course may logically be more than the amount stated in the charging instrument, is not posited as the maximum possible restitution but only as a factor that the court must "consider." And the direction that the court consider such other factors as it deems appropriate gives considerable flexibility in setting the restitutionary amount. Second, § 3664(e) gives estoppel effect, in a subsequent civil proceeding, to "[a] conviction of a defendant for an offense *involving the act* giving rise to restitution under [§ 3663]." 18 U.S.C.A. § 3664(e) (West 1985) (emphasis added). If Congress had intended to limit the permissible amount of restitution to the amount specified in the count charging the offense of which the defendant is convicted, subsection (e) could have read more simply "for an offense giving rise to restitution," and the phrase "involving the act" would be superfluous. We do not regard it as superfluous, however, *see United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955) ("[i]t is our duty 'to give effect, if possible, to every clause and word of a statute'" (quoting *Montclair v. Ramsdell,* 107 U.S. 147, 152, 27 L.Ed. 431 (1883))), for we think the inclusion of the phrase implies that the acts for which restitution may be ordered must be related to the offense of which the defendant is convicted, but that those acts may extend beyond the boundaries of the offense itself.

In sum, a reading of all the VWPA's restitutionary sections together suggests that the Act permits the sentencing court, in ordering restitution to any victim of the offense of which the defendant is convicted, to order payment of an amount that takes into consideration the entire amount of the victim's loss resulting both from the offense itself and from the defendant's related acts. Under this interpretation, if the defendant has engaged in a continuing course of conduct causing a given victim a series of losses, restitution may be ordered, assuming the proper procedures are followed, in the entire amount of the loss even if the defendant is convicted of a limited offense that technically caused only part of the loss.

Our reading of the history of the Act confirms the view that Congress intended to give the sentencing court this broader restitutionary authority. Prior to 1983, the Probation Act was the sole source of the federal sentencing court's authority to order a convicted defendant to make restitution to the victim of his offense. That statute, which authorizes the court to impose restitution only as a condition of probation, provides that a defendant "[m]ay be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had." 18 U.S.C. § 3651. Most courts have concluded that a restitution order under this section generally may not exceed amounts charged in the offense for which the defendant is actually convicted, *see, e.g., United States v. Elkin,* 731 F.2d 1005, 1011 (2d Cir.), *cert denied,* 469 U.S. 822, 105 S.Ct. 97, 83 L.Ed.2d 43 (1984); *United States v. Orr,* 691 F.2d 431, 433–34 (9th Cir.1982), and cases cited therein; *United States v. Tiler,* 602 F.2d 30, 33 (2d Cir.1979), though several courts, including this one, have indicated that the sentencing court has the power under § 3651 to order restitution in a higher amount if the defendant agrees to pay such restitution or concedes his liability for the higher amount, *see, e.g., United States v. Woods,* 775 F.2d 82, 87–88 (3d Cir.1985); *Phillips v. United States,* 679 F.2d 192 (9th Cir.1982); *United States v. Elkin,* 731 F.2d at 1012 (distinguishing *Phillips* on its facts).

One of Congress's goals in enacting the VWPA was to increase the sentencing court's use of restitution orders, deemed to be too limited under § 3651. *See* S.Rep. No. 532, 97th Cong., 2d Sess. ("S.Rep. 532") 30–33, *reprinted in* 1982 U.S. Code Cong. & Admin. News ("USCCAN") 2515, 2536–39. Noting that one of the problems with § 3651 was that "[a]s a matter of practice, even that discretionary grant of authority

[was] infrequently used," *id.* at 30, USCCAN at 2536, the report of the Senate Judiciary Committee stated that "[t]he premise of [§ 3663] is that the court in devising just sanctions for adjudicated offenders, should insure that the wrongdoer make goods [*sic*], *to the degree possible*, the harm he has caused his victim," *id.; see also id.* (Act designed to help "insure that the wrongdoer is required *to the degree possible* to restore the victim to his or her prior state of well-being") (emphasis added). The legislative history concluded that through the enactment of § 3663, the "increased use of restitution orders [would be] encouraged." *Id.* at 33, USCCAN at 2539. The Findings and Purposes included in the Act itself similarly stated that one of the purposes of the Act was "to ensure that the Federal Government does *all that is possible* within limits of available resources to assist victims and witnesses of crime without infringing on the constitutional rights of the defendant." Pub.L. No. 97–291, § 2, 96 Stat. 1249 (emphasis added), *reprinted in* note following 18 U.S.C. § 1512 (1982).

The apparent conflict between Congress's expressed intent that crime victims be compensated to the maximum extent possible and the proposition that the charge on which the defendant is convicted establishes the maximum restitution that may be ordered is intensified by the fact that the vast majority of criminal cases are concluded by plea bargains. *See, e.g., Innes v. Dalsheim,* 864 F.2d 974, 976 (2d Cir.1988) (noting a 1976 "estimate[ ] that as high as 90 percent of all criminal convictions are obtained by guilty pleas"); Fed.R. Crim.P. 11 Advisory Committee Note to 1974 Amendment (noting a 1968 "estimate indicat[ing] that guilty pleas account for the disposition of as many as 95% of all criminal cases"); *see also Santobello v. New York,* 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) (the multitude of cases makes plea bargaining "an essential component of the administration of justice"). Since plea bargains often allow the defendant to be convicted of but a fraction of the charges leveled against him, a rule that the offense to which the plea is en-

tered establishes the maximum restitution the court is allowed to order would in many cases minimize the restitution available to the victim of the offense.

We doubt that Congress was unaware when it enacted the VWPA of the prevalence of disposition through plea bargaining, *see, e.g.,* Notes of Committee on the Judiciary on Fed.R.Crim.P. 11, H.R.Rep. No. 247, 94th Cong., 1st Sess. 6, *reprinted in* 1975 USCCAN 674, 678 ("[n]o observer is entirely happy that our criminal justice system must rely to the extent it does on negotiated dispositions of cases"); *see generally* S.Rep. 532, at 10, *reprinted in* 1982 USCCAN at 2516, and there is at least circumstantial evidence that in retrospect Congress interpreted § 3663 as plainly not meaning that the offense to which a defendant pleaded guilty would establish the maximum restitution that the sentencing court could order. Where a plea of guilty is proffered, the Federal Rules of Criminal Procedure require the sentencing court, before accepting the plea, to advise the defendant of the possibility that he may be required to pay restitution to any victim of the offense to which he pleads guilty:

> Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
>
> > (1) ... when applicable, that the court may also order the defendant to make restitution to any victim of the offense ....

Fed.R.Crim.P. 11(c). This language was added to Rule 11 in 1985 in recognition of the VWPA. *See* Rule 11 Advisory Committee Note. The Rule does not require the court to advise the defendant of the maximum amount of restitution that may be ordered, and the Advisory Committee Note states that the reason for this omission is that the "upper limit *cannot* ... be stated at the time of the plea." *Id.* (emphasis added). The inference required from this observation is that the amount of loss specified in the count to which the defendant pleads guilty simply does not provide an

upper limit on the restitution that may be ordered. Given the process by which the Rules of Procedure governing proceedings in the district courts are adopted, this interpretation has the imprimatur of Congress. Rules changes are generally proposed by the Supreme Court and are presented to Congress along with the notes of the Judicial Conference advisory committees that drafted the proposals; the proposed changes do not become effective until at least 90 days after they have been presented to Congress. 18 U.S.C. § 3771 (1982); 28 U.S.C. § 2072 (1982). Congress may, either expressly or by inaction, allow the proposed rules to take effect; or it may delay or prevent their taking effect; or it may amend them and allow them to take effect as amended. *See, e.g., United States v. Pisani,* 773 F.2d 397, 404 (2d Cir.1985). Though Congress from time to time has exercised its power to amend parts of various Rules, including Rule 11, *see, e.g.,* Fed.R.Crim.P. 11 Advisory Committee Note to 1974 Amendment, it was apparently content to allow the 1985 modification of the terms of Rule 11(c)(1) to take effect without amendment and without disturbing the Advisory Committee Note's statement that the maximum permissible restitution on a given count "cannot" be determined at the time of the plea.

Most of the other courts of appeals that have considered this question have concluded as we do that § 3663 authorizes the sentencing court, in appropriate circumstances, to order restitution in an amount higher than the value of the property that is the subject of the offense of which the defendant is convicted. *See, e.g., United States v. Pomazi,* 851 F.2d 244, 249 (9th Cir.1988); *United States v. Kirkland,* 853 F.2d 1243, 1249–50 (5th Cir.1988); *United States v. Hill,* 798 F.2d 402, 405 (10th Cir. 1986); *United States v. Paul,* 783 F.2d 84, 88 (7th Cir.1986); *United States v. Durham,* 755 F.2d 511, 513 (6th Cir.1985). *But see United States v. Barnette,* 800 F.2d 1558, 1571 (11th Cir.1986) (per curiam), *cert. denied,* 480 U.S. 935, 107 S.Ct. 1578, 94 L.Ed.2d 769 (1987). The cases most similar to the present case are *Paul* and *Pomazi.*

In *Paul,* the defendant pleaded guilty to an information, of which count 2, the only count to which the VWPA was applicable, charged her with embezzlement of $12,500 from the bank by which she had been employed. Her oral plea agreement did not mention restitution, but the subject was raised by the court at her plea hearing. In response to the court's inquiry, Paul's attorney stated that Paul " 'would admit responsibility for $118,000 shortage.' " *Id.* at 86. The court ordered restitution in the amount of $141,050. On appeal, Paul contended that the court had no power to order restitution in any amount higher than $12,500. The court of appeals largely rejected this contention. Though it agreed that the court should not have ordered restitution in an amount higher than $118,-000, since no higher amount was proven at the presentence stage, it concluded that an order for restitution of $118,000 was permissible. Noting (a) that Paul's counsel had "expressly indicated during the discussion of restitution that Mrs. Paul admitted to having caused losses of $118,000 to the bank," (b) that as a result of the discussion at the plea hearing, Paul "had to have been aware of the fact that the district judge would impose a restitution condition to her sentence of at least $118,000," and (c) that Paul had, but did not exercise "an opportunity to object and withdraw her offer to plead," the court concluded that Paul "did consent to make restitution in the amount of $118,000." *Id.* at 88.

In *Pomazi,* in which neither the information nor the plea agreement specified a dollar amount for victim losses, the Ninth Circuit similarly ruled that

> the sentencing court's determination of the proper amount of restitution is not limited by the amount of victim losses alleged in the charging instrument, so long as the defendant is given ample opportunity to contest the restitution amount, the amount of restitution ordered is supported by the evidence, and the amount is judicially established.

851 F.2d at 249. It reached this conclusion after noting the implication, discussed above, of the Advisory Committee Note to

the 1985 Amendment to Rule 11, and observing that § 3663(b)(2), relating to bodily injury losses, permits restitution of certain types of losses, such as medical expenses and the cost of therapy, which are highly unlikely to be mentioned in an information or indictment. *See also United States v. Durham,* 755 F.2d at 513 (Congress intended to include as a "victim" any "person who suffered injury as a result of the defendant's actions that surrounded the commission of the offense, regardless of whether the actions are elements of the offense charged").

In all the circumstances, given the absence of a stated maximum in the Act, the flexibility of discretion conferred by several of the statutory provisions, the repeated expression by Congress of its intent that crime victims be compensated to the greatest extent possible, and the implicit approval by Congress of the Rule 11 commentary, we conclude that Congress did not intend to limit the sentencing court's restitutionary authority to the amount specified in the charge on which the defendant is convicted where the victim of that offense also suffered other losses as a result of the defendant's related course of conduct.

■ This conclusion does not suggest that the sentencing court is authorized to order restitution in the higher amounts without affording the defendant appropriate constitutional safeguards. At a minimum, the defendant must be forewarned that restitution may be ordered in the higher amount, and he must be given an opportunity to contest any allegation as to the amount of loss he is supposed to have caused. Eventually, the amount of loss to be compensated through restitution must either be conceded by the defendant or be adjudicated by the court. *See United States v. Weichert,* 836 F.2d 769, 772 & n. 4 (2d Cir.1988); 18 U.S.C.A. § 3664(d) (West 1985) (establishing procedures and allocating burdens of proof with respect to disputes as to amount of restitution).

■ In the present case, we conclude that the district court did not exceed its authority in ordering Berrios to make restitution in the amount of $2,905. Berrios was forewarned by the plea agreement that restitution might be ordered. Though it would have been better if that agreement had stated that the government might seek restitution in an amount greater than the $1,349 loss alleged in the count to which Berrios agreed to plead guilty, and the government would be well advised to include, if relevant and possible, a quantified statement to such an effect in all of its plea agreements, *see, e.g., United States v. Kirkland,* 853 F.2d at 1245, 1249–50, the absence of detail in the agreement in this case was not dispositive. Berrios received ample warning from the court at the plea hearing, prior to entering his plea of guilty, that the court was inclined to require him to make restitution in the total amount of loss theretofore suffered by the Bank as a result of Berrios's admitted series of thefts. In the face of the court's explicit warning, Berrios nonetheless chose to plead guilty.

Further, Berrios had acknowledged stealing 14 or 15 checks from the New Haven Post Office over the course of three months, and he did not dispute the fact that the Bank's losses resulting from his thefts totaled $2,905. Rather, his attorney stated that he "fully [ac]knowledged guilt" and the correctness of this figure, and that he recognized his "moral obligation to pay back $2,905."

Thus, all of the conditions precedent to the court's ordering restitution in an amount higher than the loss alleged in the information were fulfilled. Berrios was fully informed of the possibility of restitution in the entire amount acknowledged. He had an opportunity to decline to plead guilty; he had an opportunity to seek to withdraw that plea. He attempted neither. Indeed, upon questioning by this Court at oral argument of the present appeal, Berrios's attorney stated that Berrios still has no desire to have his plea vacated. In view of all the circumstances, we conclude that the restitution order did not infringe his statutory or constitutional rights.

■ Finally, we add that if we had concluded that the district court lacked the authority to order restitution for the full

$2,905, we would not, in light of the record before us, simply reduce the amount of restitution ordered but would remand to the district court for resentencing. Berrios's acknowledgement of his moral responsibility for the entire loss and his willingness to make restitution were clearly an important factor in the district court's decision as to what other punishments to impose. The court noted, for example, in announcing that it would not sentence Berrios to incarceration, that "the restitution will be important." Thereafter, Berrios's attorney, while repeating the challenge to the court's authority, nonetheless stated that Berrios "will certainly abide by whatever order this Court imposes." Having made such representations to the court in order to induce sentencing leniency, Berrios may not retain the resulting benefits while retracting the undertaking on which the sentencing court has relied.

## CONCLUSION

The order of the district court declining to reduce the amount of restitution ordered is affirmed.

MESKILL, Circuit Judge, concurring:

I concur, but I am not as convinced as the majority that the language of the Victim and Witness Protection Act, 18 U.S.C.A. 3663 (West 1985 & Supp.1988), and the legislative history suggest an affirmative answer to the difficult question Berrios poses.

While I agree with the majority's position that in this case restitution in an amount higher than that charged in the information was properly ordered, I am concerned with the future implications of our holding. In my view, ordering restitution in an amount higher than the amount charged in the information is only proper where the higher amount is attributable to collateral consequences arising out of the specific offense to which the defendant has pled guilty. Where there are no such consequences, ordering restitution in the higher amount is an improper expansion of the court's sentencing power. On the facts in this case, however, I would affirm without reaching the question whether restitution may be ordered in an amount greater than the amount charged in the information to which Berrios pled guilty.

In challenging his sentence, Berrios does not seek to withdraw his plea. Neither does he request resentencing even though, having had the benefit of a lenient sentence based on his concession of a moral obligation to make full restitution, resentencing is what he should have to face, should the restitution order be ruled excessive. We need not even consider these options, however, because Berrios has no cause whatever to complain. At the time of his bargained-for plea, he knew that there was a likelihood that the order of restitution would be for $2,905, an amount higher than the $1,349 charged in the information. While it is true that Berrios' counsel challenged the court's authority to order restitution beyond the $1,349 charged, counsel acknowledged that $2,905 was the total loss Berrios caused the bank. Counsel stated further that Berrios would "certainly abide by whatever order [the District] Court imposes." Counsel also indicated that her client felt a moral obligation to pay back the higher amount. Sentencing Tr. 8–9. This gave rise to the court's compassionate statement: "You seem to have genuine remorse which is one of the major factors and you have tried to cooperate and the restitution will be important." *Id.* at 4. The court thereafter sentenced Berrios. The facts in this case show a rather "fully bargained" plea agreement. Having chosen to go along with the plea agreement, I believe Berrios has waived his right to challenge the restitution order. He should not now be heard to complain; he has not been harmed. He has been ordered to do only what he admits he is morally obligated to do and what he agreed to do in order to escape incarceration.

I would affirm on this limited basis and leave the more difficult question for another day.