## HUGHEY v. UNITED STATES

No. 89–5691.   Argued March 27, 1990—Decided May 21, 1990

MARSHALL, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, BLACKMUN, STEVENS, O'CONNOR, and SCALIA, JJ., joined, and in which WHITE and KENNEDY, JJ., joined except as to Part II–C.

*Lucien B. Campbell* argued the cause and filed briefs for petitioner.

*Amy L. Wax* argued the cause *pro hac vice* for the United States. With her on the brief were *Solicitor General Starr, Assistant Attorney General Dennis,* and *Deputy Solicitor General Shapiro.** 

JUSTICE MARSHALL delivered the opinion of the Court.†

The restitution provisions of the Victim and Witness Protection Act of 1982 (VWPA), 18 U. S. C. §§ 3579, 3580 (1982 ed. and Supp. IV), authorize federal courts, when sentencing defendants convicted of certain offenses, to order, "in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense." 18 U. S. C. § 3579(a)(1) (1982 ed., Supp. IV). We must decide whether these provisions allow a court to order a defendant who is charged with multiple offenses but who is con-

---

*Victor A. Kovner* and *Leonard J. Koerner* filed a brief for the City of New York as *amicus curiae* urging affirmance.

*Thomas W. Brunner* and *Richard H. Gordin* filed a brief for the Insurance Crime Prevention Institute et al. as *amici curiae.*

†JUSTICE WHITE and JUSTICE KENNEDY join all but Part II–C of this opinion.

victed of only one offense to make restitution for losses related to the other alleged offenses. We hold that the language and structure of the Act make plain Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction.[1]

## I

In 1986, petitioner Frasiel L. Hughey was indicted for three counts of theft by a United States Postal Service employee and three counts of use of unauthorized credit cards. Petitioner pleaded guilty to count 4 of the indictment in exchange for the Government's agreement to dismiss the remaining counts and to forgo prosecution "for any other offense arising in the Western District of Texas as part of the scheme alleged in the indictment." App. 7. Count 4 charged "[t]hat on or about October 18, 1985, . . . [petitioner]

---

[1] The restitution provisions in effect at the time of petitioner's sentencing were recodified, effective November 1, 1987, pursuant to the Sentencing Reform Act of 1984, 98 Stat. 1987. Thus, 18 U. S. C. § 3579 now appears as 18 U. S. C. § 3663, and 18 U. S. C. § 3580 appears as 18 U. S. C. § 3664. We will refer to the provisions as they were codified at the time of petitioner's sentencing in April 1987. See 18 U. S. C. §§ 3579, 3580 (1982 ed.).

Additionally, in 1986 Congress amended the language of § 3579(a), replacing "victim of the offense" with "victim of such offense." Criminal Law and Procedure Technical Amendments Act of 1986, 100 Stat. 3619. The amendment — making this sole change — became effective on the date of its enactment, ibid., which was after petitioner committed the offense but prior to his sentencing. The parties agree that the change in language was not intended to alter the meaning of the provision. See H. R. Rep. No. 99–334, p. 7 (1985). But they disagree as to which version of the Act governs, because the House Report accompanying the amendment arguably supports petitioner's view that VWPA does not authorize courts to order restitution for losses beyond those caused by the offense of conviction. We agree with the implicit conclusion of the court below that the amended version applies to this case, see 877 F. 2d 1256, 1258 (CA5 1989), though we note that our construction of the statute does not turn on the minor change in the language or on the legislative history accompanying the amendment, see n. 5, infra.

did knowingly and with intent to defraud use an unauthorized [MBank Mastercard credit card] issued to Hershey Godfrey, . . . and by such conduct did obtain things of value aggregating more than $1,000 . . . ." *Id.*, at 5. During the plea proceeding and as part of the factual basis of petitioner's plea, the Government proffered evidence that petitioner had stolen not only Godfrey's card, but also at least 15 other cards. *Id.*, at 10. Petitioner's counsel informed the court at that time that petitioner's plea was confined to the allegations in count 4 and that petitioner did "not mak[e] admissions to anything other than the facts pertaining to count four." *Id.*, at 11.

After the plea hearing but before sentencing, the Government notified petitioner that it would propose that he be ordered to pay restitution of $147,646.89. The Government calculated that figure by adding the losses of several financial institutions, including MBank, that resulted from petitioner's alleged theft and use of approximately 30 credit cards. Petitioner objected to the proposed restitution order on the ground that the proposed figure was unauthorized because it "exceed[ed] the losses of any victims of the offense of which the Defendant was convicted." *Id.*, at 13. The Government then submitted a revised restitution figure of $90,431, the total of MBank's losses relating to petitioner's alleged theft and use of 21 cards from various MBank cardholders. Petitioner countered that the appropriate restitution figure should be $10,412, the losses MBank sustained as a result of all unauthorized uses of the Godfrey credit card identified in the count for which he was convicted.

The District Court ordered petitioner to make restitution to MBank in the amount of $90,431. *Id.*, at 78. Petitioner moved to reduce and correct his sentence under Federal Rule of Criminal Procedure 35, arguing that the District Court had exceeded its authority in ordering restitution for offenses other than the offense of conviction. The District Court denied the motion. *Id.*, at 82–85. The Court of Appeals for the Fifth Circuit affirmed, holding that "VWPA permits a

court to require restitution beyond that amount involved in the offense of conviction when there is a significant connection between the crime of conviction and similar actions justifying restitution." 877 F. 2d 1256, 1264 (1989).

The courts of appeals have reached varying conclusions regarding a court's ability under VWPA to require an offender to pay restitution for acts other than those underlying the offense of conviction.[2] We granted certiorari to resolve this split in authority. 493 U. S. 1018 (1990).

## II

### A

As in all cases involving statutory interpretation, we look first to the language of the statute itself. *Landreth Timber Co.* v. *Landreth*, 471 U. S. 681, 685 (1985). Title 18 U. S. C. § 3579(a)(1) (1982 ed., Supp. IV) provides that "a defendant

---

[2] The Fifth Circuit's decision in this case follows the decisions of the Second and Tenth Circuits. See *United States* v. *Berrios*, 869 F. 2d 25, 32 (CA2 1989) (permitting court to order restitution for losses beyond those "specified in the charge on which the defendant is convicted where the victim of that offense also suffered other losses as a result of the defendant's related course of conduct"); *United States* v. *Duncan*, 870 F. 2d 1532, 1537 (CA10 1989) (permitting court to order restitution for "other criminal acts that had a significant connection to the act for which conviction was had"). The Sixth Circuit has held that a court may require a defendant to make restitution "to victims of the offense for which he was convicted." *United States* v. *Durham*, 755 F. 2d 511, 512 (1985). The Eleventh Circuit has held that "[t]he amount of restitution [under VWPA] may not exceed the actual losses flowing from the offense for which the defendant has been convicted." *United States* v. *Barnette*, 800 F. 2d 1558, 1571 (1986) (citing *United States* v. *Johnson*, 700 F. 2d 699, 701 (CA11 1983) (construing Federal Probation Act, 18 U. S. C. § 3651 (1982 ed.)). The Ninth Circuit has ruled that "in cases which involve a continuing scheme to defraud, 'it is within the power of the court to require restitution of any amount up to the entire illicit gain from such a scheme, even if only some specific incidents are the basis of the guilty plea.'" *United States* v. *Pomazi*, 851 F. 2d 244, 250 (1988) (quoting *United States* v. *Davies*, 683 F. 2d 1052, 1055 (CA7 1982)).

convicted of an offense" may be ordered to "make restitution to any victim of such offense." Other subsections of § 3579 likewise link restitution to the offense of conviction. See § 3579(b)(1) (listing damages recoverable "in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense"); § 3579(b)(2) (listing damages recoverable "in the case of an offense resulting in bodily injury to a victim"); § 3579(b)(3) (listing damages recoverable "in the case of an offense resulting in bodily injury [that] also results in the death of a victim"). As the Government concedes, Brief for United States 14, a straightforward reading of the provisions indicates that the referent of "such offense" and "an offense" is the offense of conviction. Given that the ordinary meaning of "restitution" is restoring someone to a position he occupied before a particular event, see, e. g., Webster's Third New International Dictionary 1936 (1986); Black's Law Dictionary 1180 (5th ed. 1979), the repeated focus in § 3579 on the offense of which the defendant was convicted suggests strongly that restitution as authorized by the statute is intended to compensate victims only for losses caused by the conduct underlying the offense of conviction.

The Government argues, however, that § 3579 answers only the question of *who* may receive restitution and offers no guidance as to *how much* restitution a court may order the defendant to pay. In the Government's view, § 3579(a) indicates merely that to receive restitution, a victim must be a victim of the offense of conviction. Once such a victim is identified, the Government maintains, the amount of restitution is calculated in accordance with 18 U. S. C. § 3580(a) (1982 ed.), which provides:

> "The court, in determining whether to order restitution under section 3579 of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the fi-

nancial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate."

Specifically, the Government contends that the catchall phrase of § 3580(a), which directs courts to consider "such other factors as the court deems appropriate," authorizes courts to include in their restitution calculus losses resulting from offenses other than the offense of conviction.

The Government's reading of §§ 3579 and 3580 is unconvincing. As an initial matter, the detailed substantive guidance regarding the calculation of restitution that is found in subsections (b)(1), (b)(2), and (b)(3) makes clear that § 3579[3]

---

[3] Section 3579(b) provides in part:

"The [restitution] order may require that such defendant—

"(1) in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense—

"(A) return the property to the owner of the property or someone designated by the owner; or

"(B) if return of the property under subparagraph (A) is impossible, impractical, or inadequate, pay an amount equal to the greater of—

"(i) the value of the property on the date of the damage, loss, or destruction, or

"(ii) the value of the property on the date of sentencing,
less the value (as of the date the property is returned) of any part of the property that is returned;

"(2) in the case of an offense resulting in bodily injury to a victim—

"(A) pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

"(B) pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

"(C) reimburse the victim for income lost by such victim as a result of such offense;

"(3) in the case of an offense resulting in bodily injury [that] also results in the death of a victim, pay an amount equal to the cost of necessary funeral and related services . . . ."

does more than simply designate *who* is entitled to restitution under the Act; those provisions establish the *amount* of restitution that courts can award for various losses caused by the offense.

In addition, it would be anomalous to regard § 3580, which delineates "[p]rocedure[s] for issuing order[s] of restitution," rather than § 3579, which governs the court's authority to issue restitution orders, as fixing the substantive boundaries of such orders. The Government's argument ignores this Court's commitment to "giving effect to the meaning and placement of the words chosen by Congress." *Adams Fruit Co.* v. *Barrett,* 494 U. S. 638, 645 (1990) (rejecting claim that Congress intended to limit private right of action under Migrant and Seasonal Agricultural Worker Protection Act, 29 U. S. C. § 1801 *et seq.,* in section other than "Enforcement Provisions" section in which Congress established private right of action).

More significantly, § 3580(a)'s catchall phrase does not reflect a congressional intent to include in the restitution calculus losses beyond those caused by the offense of conviction. Section 3580(a) sets forth the considerations for "determining whether to order restitution under section 3579 of this title and the amount of such restitution." The first such consideration is "the amount of loss sustained by any victim as a result of the offense." This language suggests persuasively that Congress intended restitution to be tied to the loss caused by the offense of conviction. Indeed, had Congress intended to permit a victim to recover for losses stemming from all conduct attributable to the defendant, including conduct unrelated to the offense of conviction, Congress would likely have chosen language other than "the offense," which refers without question to the offense of conviction. See *supra,* at 416.

The remaining considerations preceding the catchall phrase also are designed to limit, rather than to expand, the scope of any order of restitution. These factors—"the financial re-

sources of the defendant" and "the financial needs and earning ability of the defendant's dependents"—provide grounds for awarding *less* than full restitution under the statute. Congress plainly did not intend that wealthy defendants pay *more* in "restitution" than otherwise warranted because they have significant financial resources, nor did it intend a defendant's dependents to be forced to bear the burden of a restitution obligation because they have great "earning ability." In light of the principle of *ejusdem generis*—that a general statutory term should be understood in light of the specific terms that surround it—the catchall phrase should not be read to introduce into the restitution calculus losses that would expand a defendant's liability beyond the offense of conviction. Cf. *Federal Maritime Comm'n* v. *Seatrain Lines, Inc.*, 411 U. S. 726, 734 (1973) (holding that "catchall provision" is "to be read as bringing within a statute categories similar in type to those specifically enumerated"). Moreover, this reading of the catchall phrase harmonizes § 3580(a) with § 3579(a)(2), which states that "[i]f the court does not order restitution, or orders only partial restitution, under this section, the court shall state on the record the reasons therefor." If a court chooses to award partial or no restitution in accordance with § 3579(a)(2), it must couch its refusal in terms of the criteria set forth in § 3580(a).[4]

---

[4] Under the Government's construction of § 3580(a), a court that did not award restitution for acts beyond the offense of conviction would presumably be required to explain its refusal to do so under § 3579(a)(2). The requirement that a court explain its refusal to award full restitution is more consistent with a scheme that establishes a clearly discernable outer limit of restitutionary liability than with one that permits an open-ended inquiry into losses resulting from the "defendant's related course of conduct," *Berrios*, 869 F. 2d, at 32, or from "acts that had a significant connection to the act for which conviction was had," *Duncan*, 870 F. 2d, at 1537. Further, the open-ended approach to restitution advocated by the Government, taken with § 3579(a)(2)'s requirement that a court explain its refusal to award full restitution, would in some cases undermine the statute's goal of compensating victims. Section 3579(d) authorizes a court to decline to

Section 3580(a) hence confirms, rather than undermines, our conclusion that the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order. We reject as implausible the Government's contention that the "such other" language in § 3580(a)'s catchall phrase imports into the restitution provisions a wholly new substantive dimension not otherwise evident in the statute. Rather, the factors listed in § 3580(a), including the catchall factor, are intended to guide a court's discretion when it decides whether to award full or partial restitution under § 3579.

## B

The Government endeavors to buttress its interpretation of the statute by invoking the expansive declaration of purpose accompanying VWPA, see, e. g., § 2(b)(2), note following 18 U. S. C. § 1512 (one purpose of the Act is "to ensure that the Federal Government does all that is possible within limits of available resources to assist victims . . . without infringing on the constitutional rights of the defendant"), and by referring to portions of the legislative history that reflect Congress' goal of ensuring "that Federal crime victims receive the fullest possible restitution from criminal wrongdoers," 128 Cong. Rec. 27391 (1982) (remarks of Rep. Rodino).[5]

---

award restitution altogether where "the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution . . . outweighs the need to provide restitution to any victims." Determining the existence of, and resulting loss from, offenses other than the one supporting conviction will often be sufficiently difficult to implicate this provision.

[5] We need not decide whether further support for our reading of the statutory provisions can be gleaned from the legislative history of the amended version of § 3579(a). See n. 1, *supra*. We note, and the Government implicitly concedes, that whatever light the legislative history sheds on the issue is favorable to petitioner. See H. R. Rep. No. 99–334, p. 7 (1985) (citing H. R. Rep. No. 98–1017, p. 83, n. 43 (1984)) ("To order a defendant to make restitution to a victim of an offense for which the de-

The Government also emphasizes policy considerations that purportedly support court-ordered restitution for acts outside the offense of conviction. Without such authority, the Government insists, in many cases courts cannot compensate victims for the full losses they suffered as a result of a defendant's conduct. The potential for undercompensation is heightened by prosecutorial discretion in charging a defendant, the argument goes, because prosecutors often frame their indictments with a view to success at trial rather than to a victim's interest in full compensation. See, *e. g.*, *United States* v. *Hill*, 798 F. 2d 402, 405 (CA10 1986). Finally, the Government maintains that the extensive practice of plea bargaining would, as a practical matter, wholly undermine victims' ability to recover fully for their losses because prosecutors often drop charges of which a defendant may be guilty in exchange for a plea to one or more of the other charges. See, *e. g.*, *United States* v. *Berrios*, 869 F. 2d 25, 30 (CA2 1989).

These concerns are not insignificant ones, but neither are they unique to the issue of victim compensation. If a prosecutor chooses to charge fewer than the maximum possible number of crimes, the potential recovery of victims of crime is undoubtedly limited, but so too is the potential sentence that may be imposed on a defendant. And although a plea agreement does operate to limit the acts for which a court may order the defendant to pay restitution, it also *ensures* that restitution will be ordered as to the count or counts to which the defendant pleads guilty pursuant to the agreement. The essence of a plea agreement is that both the prosecution and the defense make concessions to avoid potential losses. Nothing in the statute suggests that Congress intended to exempt victims of crime from the effects of such a bargaining process.

---

fendant was not convicted would be to deprive the defendant of property without due process of law").

## C

In any event, we need not resolve the policy questions surrounding VWPA's offense-of-conviction limitation on restitution orders. Even were the statutory language regarding the scope of a court's authority to order restitution ambiguous, longstanding principles of lenity, which demand resolution of ambiguities in criminal statutes in favor of the defendant, *Simpson* v. *United States*, 435 U. S. 6, 14–15 (1978) (applying rule of lenity to federal statute that would enhance penalty), preclude our resolution of the ambiguity against petitioner on the basis of general declarations of policy in the statute and legislative history. See *Crandon* v. *United States*, 494 U. S. 152, 160 (1990) ("Because construction of a criminal statute must be guided by the need for fair warning, it is rare that legislative history or statutory policies will support a construction of a statute broader than that clearly warranted by the text").

## III

The plain language of VWPA makes clear that the District Court's restitution order in this case was unauthorized. Petitioner pleaded guilty only to the charge that he fraudulently used the credit card of Hershey Godfrey. Because the restitution order encompassed losses stemming from alleged fraudulent uses of cards issued to persons other than Godfrey, such portions of the order are invalid. Accordingly, the decision of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*