

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-9-2005

# USA v. Benjamin

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3076

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Benjamin" (2005). *2005 Decisions*. Paper 1463.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1463

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-3076

_____

UNITED STATES OF AMERICA

v.

GILBERT BENJAMIN,

*Appellant*

_____

On Appeal From the United States District Court
For the District of New Jersey
(D.C. No. 02-cr-00168)
District Judge: Honorable Mary Little Cooper

_____

Argued: May 4, 2004
Before: SLOVITER, FUENTES and BECKER, *Circuit Judges*

(Filed:   March 9, 2005)

GEORGE S. LEONE, ESQ.
SABRINA G. COMIZZOLI, ESQ. (Argued)
Office of the United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102
        *Attorneys for Appellee*

DAVID E. SCHAFER, ESQ. (Argued)
Office of the Federal Public Defender

22 South Clinton Avenue
Station Plaza #4, 4th Floor
Trenton, NJ 08609
        *Attorney for Appellant*

_____

OPINION

_____

BECKER, *Circuit Judge.*

This is an appeal by Gilbert Benjamin ("Benjamin") from a judgment in a criminal case in the wake of a jury verdict of guilty. It presents both an attack on the conviction and on the sentence. The panel having resolved at conference that the appeal of the conviction was lacking in merit, we held the case C.A.V. pending the decision of the Supreme Court in *United States v. Booker*, — U.S. —, 125 S. Ct. 738 (2005). In the wake of that decision, we will, after affirming the conviction, remand the matter for resentencing in accordance with this Court's *post-Booker* practice.

I. Facts and Procedural History

The following are the facts developed in the trial record, viewed in the light most favorable to the government. Between 1985 and 1998, Benjamin worked as a civilian computer specialist in the Communications and Electronics Command ("CECOM") of the Department of the Army in Fort Monmouth, New Jersey. In his spare time, Benjamin ran two side businesses. The first was Blue Sky Enterprises, Inc., a sexually-oriented entertainment business which offered an internet-based, interactive, adult pornographic

website with live sex shows for subscribers who paid a monthly membership fee. Blue Sky operated out of a warehouse at Allaire Airport, a private airport in Farmingdale, New Jersey, and was supported by a computer server linked to a high-speed data transmission line supplied by MCI (the "T-1 line") for internet access. Benjamin's second side business involved selling computers at discounted prices to friends and acquaintances, mostly out of the garage at his home in Neptune, New Jersey, but also through his wife or brother, Gary Benjamin, over the internet and to colleagues at work.

In August 1998, CECOM employees discovered that the government had been paying the MCI bills for the T-1 line linking Blue Sky at Allaire Airport to the internet; that Blue Sky was a pornographic website operated by Benjamin; and that the T-1 line served no governmental or military purpose. The investigations also determined that the government had paid for computer merchandise ordered by Benjamin which had been shipped to addresses in Florida and New Hampshire where the military had no presence, including to Benjamin's brother, Gary Benjamin, who owned an electronics store, A&B Computers, Inc., in Berlin, New Hampshire, and who also spent time in Sarasota, Florida. The computers were shipped to Gary Benjamin under the false military title "Colonel Gary."[1] Gary Benjamin sold the computers at discounted prices, but Gilbert Benjamin retained the proceeds. Benjamin had even authorized computer shipments, claiming that they were for either "new equipment training" or "Black Op," apparently a secret

---

[1]Shipping records also reflected that computers were shipped to Gary Benjamin's employee, Dennis Therrien, under the pseudonym "Sgt. Dennis."

3

operation.

Benjamin was charged in three different fraudulent schemes: counts 1-17 addressed the "Blue Sky Mail Fraud" scheme in which Benjamin allegedly caused the government to pay the MCI bills for a T-1 line that supported Blue Sky; counts 18-34 addressed the "Computer Mail Fraud" scheme in which Benjamin allegedly used his government position to order computers and computer parts which were paid for by the government but which he then sold privately for his own profit; and counts 35-68 addressed the "False Claim Upon the United States" scheme in which Benjamin allegedly submitted claims for reimbursement to the government for the purchase of internet services and computers which he had converted to his own personal use. Benjamin raises four issues relative to the conviction.

## II. Discussion

### A. Cross-examination of James Lockwood

Benjamin contends that the District Court erred when it refused to let him cross-examine government witness James Lockwood regarding personal financial difficulties Lockwood had in 1989. Lockwood had been Benjamin's civilian supervisor, and it was he who explained to the jury the process that led to the discovery that the government was paying for an unnecessary T-1 line that was supporting Benjamin's pornographic web site. Benjamin sought to impeach Lockwood on cross-examination with "reverse Fed. R. Evid. 404(b)" evidence that, in 1988 and 1989, Lockwood had experienced personal

4

financial difficulties and borrowed money from two subordinates. Defense counsel suggested that this evidence was relevant because it was against regulations to borrow money from an inferior and because the financial "motive" extended to the time of the indictment, ten years later. But this lapse in time itself undermines the notion that the District Court abused its discretion in excluding this evidence. At all events, considerations such as undue waste of time and confusion of the issues under Rule 403 made the exclusion reasonable; additionally, any error resulting from the exclusion would have been harmless because the evidence against Benjamin was overwhelming.

## B. Variance

Counts 18-34 charged Benjamin with a scheme to defraud the United States by profiting from the sale of computers paid for by the government. The District Court allowed the government to introduce, as "intrinsic," evidence that Benjamin sold additional computers locally, other than those shipped to New Hampshire and Florida. Benjamin claims that in so doing, the District Court created a variance between the proof and the indictment. The indictment charged that the principal object of Benjamin's computer fraud scheme was: "to unjustly enrich himself by ordering computer products . . . converting those products to his own use and then reselling them and keeping the proceeds." App. at 24. The District Court correctly ruled that the challenged evidence was intrinsic to the government's case because it demonstrated Benjamin's overarching scheme—he unjustly enriched himself by selling computers for which the government

5

had paid. We have explained that "acts are intrinsic when they directly prove" the charged offense. *United States v. Cross*, 308 F. 3d 308, 320 (3d Cir. 2002). The District Court found that the local computer sales constituted evidence of the crime charged. App. at 695. To show reversible error, Benjamin must show that (1) "there was a variance between the indictment and the proof adduced at trial" and (2) "the variance prejudiced some substantial right." *United States v. Balter*, 91 F.3d 427, 441 (3d Cir. 1996). There is no variance because the unjust enrichment that resulted from the computer sales was the type of conduct described in the indictment.

## C. Cross-examination of Linda Smollen

Benjamin called Smollen, who had been his administrative assistant at Fort Monmouth in 1996, as a witness to testify that the army inventory system allowed Jerry West free reign over the computers coming into and leaving the base. During cross-examination, the government asked Smollen about past alcohol problems. The government claims that it wanted to elicit testimony that she had abused drugs and alcohol for purposes of attacking her perception and her recollection of the events about which she testified. We find this stratagem troubling, but do not find reversible error. As suggested above, the standard of review for admissibility of evidence is abuse of discretion, *see United States v. Serafini*, 233 F. 3d 758, 768 n.14 (3d Cir. 2000), and the inclusion of this evidence hardly rises to that level. Indeed, Smollen's testimony had little probative value: she merely testified that she once assisted Jerry West in loading

computer software—hardly testimony that would have exculpated Benjamin of computer theft even had her credibility been unchallenged.

## D. Cross-examination of Eugene Samuel

Samuel was Benjamin's supervisor at Forth Monmouth and, at the time that he was subpoenaed by Benjamin to testify, he was the plaintiff in a civil employment discrimination suit against the Department of Defense. According to Benjamin, the Court "severely hampered Benjamin's ability to elicit information from Samuel, and violated his Sixth Amendment right to call a witness in his defense" by permitting the government to threaten to cross-examine Samuel about matters that might lead him to invoke his Fifth Amendment right against self-incrimination. Benjamin also believes that the District Court abused its discretion by not requiring the government to state on the record, outside the presence of the jury, the supposed incriminating questions it wished to ask Samuel.

We are frankly mystified by these arguments. It appears that Samuel had a prior suspension for sexual harassment that he might have been trying to avoid being brought to light. He may also have been worried that he would be cross-examined in such a way that he would be implicated in criminal activity related to the charges against Benjamin. To allay these concerns, the District Court informed Samuel that he could invoke his Fifth Amendment right to silence and that if he was concerned that a particular question "might implicate [his] own rights," he should err "on the side of just quietly saying I think I would like to have a recess now." These considerations do not render the actions of the

7

District Court erroneous.

Benjamin also claims that "Samuel's concern over the government's threatening cross-examination ballooned into anxiety about whether his direct testimony violated his security clearance." (Benjamin Br. at 21.) But this contention makes little sense, especially in light of the District Court's caution in this area. It seems that no questions were asked that would have constrained Samuel to invoke his Fifth Amendment rights. In sum, we fail to see where there was any conflict between Benjamin's Sixth Amendment right to procure testimony and Samuel's Fifth Amendment right not to incriminate himself.

## E. Restitution

The District Court ordered Benjamin to make restitution in the amount of $383,605 to the Department of the Army pursuant to the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A. This figure included the cost of the T-1 line servicing Blue Sky ($96,733), the cost of the computers which Benjamin stole and shipped out of state ($221,431), and the cost of the computers which Benjamin stole and sold locally in New Jersey ($65,441). Benjamin submits that the uncharged computers constituted a variance, *see supra* Part II.B, and that it was therefore error to impose restitution for them. He cites *Hughey v. United States*, 495 U.S. 411 (1990) for the proposition that the court cannot order restitution for items not specifically listed in the indictment. However, a post-*Hughey* amendment has expanded the power of district

8

courts to order restitution and has enabled district courts to order restitution without regard to whether the particular criminal conduct was charged in the indictment. *See* 18 U.S.C. § 3663(a)(2). As we have explained, the 1990 amendments "were intended to change the *Hughey* interpretation of the statute by enlarging the courts' power to order restitution beyond that permitted by *Hughey*." *United States v. Seligsohn*, 981 F.2d 1418, 1422 (3d Cir. 1992).

Benjamin was charged with and convicted of mail fraud, a crime that includes a scheme as an element of the offense. *See* 18 U.S.C. § 1341. As we have explained in Part II.B, Benjamin's local sales of computers fall within the overarching scheme described in the indictment, and hence the losses from the locally sold computers resulted directly from Benjamin's criminal conduct, *see United States v. Kones*, 77 F.3d 66, 70 (3d Cir. 1996). Accordingly, the District Court did not abuse its discretion in ordering that Benjamin make restitution to the government for all the stolen computers, including those he sold locally, s*ee United States v. Crandon*, 173 F.3d 122, 125 (3d Cir. 1999).

### III. Summary

In view of the foregoing, the judgment of conviction and the order for restitution will be affirmed. However, as noted above, Benjamin's attacks on the sentence are another matter. More specifically, Benjamin makes the following objections to the sentence: (1) that the District Court erred in finding that the government had proven an amount of loss equal to one hundred percent of the amount billed for two T-1

communication lines; (2) that the District Court erred in giving him a two-level enhancement for obstruction of justice in addition to an upward departure for obstruction; and (3) that the District Court erred by giving him either an upward adjustment for obstruction of justice or an upward departure for obstruction of justice.

Because these points implicate the strictures of *Booker*, we will vacate Benjamin's sentence and remand to the District Court for resentencing.