

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-28-1999

# United States v. Akande

Precedential or Non-Precedential:

Docket 98-5526

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"United States v. Akande" (1999). *1999 Decisions.* Paper 328.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/328

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 28, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 98-5526

UNITED STATES OF AMERICA

v.

TAIWO ADESHOLA AKANDE,
        Appellant

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Crim. No. 98-cr-00519)
District Judge: Honorable Joseph H. Rodriguez

Argued September 9, 1999

Before: ROTH and WEIS, Circuit Judges, and
SHADUR,* District Judge.

(Filed December 28, 1999)

        Mitchell Ignatoff, Esquire
         (ARGUED)
        147 Union Avenue, Suite 2E
        Middlesex, New Jersey 08846

        Attorney for Appellant

_____

* Honorable Milton I. Shadur, Senior United States District Judge for the
Northern District of Illinois, sitting by designation.

Michael F. Buchanan, Esquire
  (ARGUED)
Office of the United States Attorney
970 Broad Street, Room 700
Newark, New Jersey 07102

Attorney for Appellee

OPINION OF THE COURT

WEIS, Circuit Judge.

In the absence of a specific agreement to the contrary, an order of restitution in a criminal case may not include losses caused by conduct that falls outside the temporal limits established by a guilty plea. Because the District Court added restitution for fraudulent conduct that occurred before the date of the offense as established in the plea agreement and colloquy, we will remand for a reduction of the amount assessed.

After pleading guilty to an Information charging her with a conspiracy to commit credit card fraud, defendant Taiwo Adeshola Akande was sentenced to 15 months imprisonment and directed to pay restitution of $83,137. Acting in concert with two others, she had used stolen or altered credit cards to obtain cash advances and merchandise, in violation of 18 U.S.C. S 1029(a)(2) and 18 U.S.C. S 1029(b)(2).1 The alleged conspiracy, according to the Information, took place from "on or about December 31, 1997 to on or about July 8, 1998."

Defendant reached a plea agreement in a letter from the United States Attorney on August 25, 1998. On that same day, she filed an Application for Permission to Enter Plea of

_____

1. The statute reaches anyone who "knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period; . . . if the offense affects interstate or foreign commerce . . . ." 18 U.S.C.S 1029(a)(2). Defendant was liable as a co-conspirator under a separate provision in the statute. Id. S 1029(b)(2).

2

Guilty, which also contained a Waiver of Indictment. In that document, she stated that "[t]he substance of the plea agreement is: Guilty Plea to 1 count information charging a conspiracy . . . from 12/31/97 to 7/8/98."

In the Presentence Report, the probation officer calculated the victims' losses at $83,137. This sum included two instances of fraud predating December 31, 1997: a cash advance of $2,900 on November 27, 1997, and another transaction for $11,200 negotiated on November 20, 1997. At sentencing, defendant objected to the inclusion of those two events and pointed out that she pleaded guilty only to conduct occurring on or after December 31, 1997. The government countered that she or her cohorts had been involved in both incidents. The District Court included both items in its restitution order, stating that the disputed transactions "were part of the conspiracy charged in these cases."

On appeal, defendant contends that restitution is due only for conduct occurring on or after December 31, 1997. The government asserts that the District Court was correct because the activity was part of the charged conspiracy, and the relevant statutes permit courts to order restitution for conduct not included in the Information.

We exercise plenary review over the determination that restitution was lawful, and review the amount awarded for clear error. United States v. Jacobs, 167 F.3d 792, 795 (3d Cir. 1999).

We begin with the firmly established principle that federal courts may not order restitution in the absence of statutory authorization. United States v. Hensley, 91 F.3d 274, 276 (1st Cir. 1996); United States v. DeSalvo, 41 F.3d 505, 511 (9th Cir. 1994); United States v. Casamento, 887 F.2d 1141, 1177 (2d Cir. 1989). The history of the pertinent statutes, past and present, reveals that this authorization is limited to the "offense of conviction." The Federal Probation Act of 1948 permitted a sentencing judge to order restitution for "loss caused by the offense for which conviction was had." Act of June 25, 1948, ch. 645, S 3651, 62 Stat. 683, 842 (1948) (codified at 18 U.S.C. S 3651 and repealed 1984). Similarly, the Victim and Witness Protection Act of 1982

3

also tied restitution to the offense of conviction, stating that a court, "when sentencing a defendant convicted of an offense under this title . . . , may order . . . restitution to any victim of the offense." Pub. L. No. 97-291, S 5(a), 96 Stat. 1248, 1253 (1982) (codified at 18 U.S.C. S 3579(a)(1) and recodified and amended as 18 U.S.C. S 3663).

In Hughey v. United States, 495 U.S. 411 (1990) (Hughey I), the defendant pleaded guilty to one count in exchange for dismissal of all other charges. He did not admit to any conduct beyond the count of conviction. The sentencing court nevertheless ordered him to pay restitution for the additional losses attributable to the dismissed counts.

The Supreme Court, focusing on the language of 18 U.S.C. S 3579, held that the statute "link[ed] restitution to the offense of conviction." Id. at 416. Had Congress intended otherwise, it "would likely have chosen language other than `the offense,' which refers without question to the offense of conviction." Id. at 418. Accordingly, restitution was allowable "only for the loss caused by the specific conduct that is the basis of the offense of conviction." Id. at 413.

The Court acknowledged that a plea agreement may operate to limit the acts for which restitution might be ordered, but pointed out that "[t]he essence of a plea agreement is that [both sides] make concessions to avoid potential losses." Id. at 421. The government's argument for greater breadth of the restitution order was thus rejected in favor of a narrow construction of the statute. Further, even were the text ambiguous, "longstanding principles of lenity" dictated that the statute be read in the defendant's favor. Id. at 422. The Court therefore concluded that restitution to victims other than those of the count of conviction was invalid. Id.

In United States v. Seligsohn, 981 F.2d 1418, 1421 (3d Cir. 1992), we followed Hughey I's admonition "that the count of conviction controls the amount of restitution." Accordingly, we instructed the District Court on remand to "focus on the counts to which pleas are entered" in order to determine the restitutionary amount. Id. at 1423.

4

Soon after the Hughey I decision, Congress acted to enlarge the set of "victims" to whom restitution could be granted. The Victim and Witness Protection Act was amended to provide that "a victim of an offense that involves as an element a scheme, a conspiracy, or a pattern of criminal activity means any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." Crime Control Act of 1990, Pub. L. No. 101-647, tit. XXV, S 2509, 104 Stat. 4789, 4863 (1990) (amending 18 U.S.C. S 3663).

As we noted in United States v. Kones, 77 F.3d 66, 70 (3d Cir. 1996), the amendment augmented the authority of the District Courts beyond that permitted by Hughey I. This expansion, however, "is not so broad that it permits a district court to order restitution to anyone harmed by any activity of the defendant related to the scheme, conspiracy or pattern." Id. The victim's harm must be closely connected to the conspiracy or scheme rather than merely tangentially. Id.

As Kones pointed out, Congress intended that restitution was to be "readily determined by the sentencing judge based upon the evidence" produced during trial or in the course of plea proceedings. Id. at 69. In short, Kones followed Hughey I's approach in applying a narrow reading of the restitution statute.

Mr. Hughey's contribution to the law of restitution did not end with the Supreme Court's opinion. He again engaged in criminal activities that ultimately came to the attention of the Court of Appeals for the Fifth Circuit in United States v. Hughey, 147 F.3d 423 (5th Cir. 1998) (Hughey II). Following his conviction -- this time for bank fraud -- his order of restitution included losses from offenses committed before the date set out in the indictment.

The Court of Appeals held that the district judge could award restitution only for "the conduct made the basis of [the defendant's] conviction." Id. at 438. Acknowledging the enactment of the 1990 amendments, the Court nevertheless reaffirmed that Hughey I's limitation of the award to losses within the scope of the offense "still stands." Id. at 437. The

5

reliance upon the temporal limits of the indictment in Hughey II is thus consistent with the admonition in Hughey I that restitution must be linked directly to the offense of conviction.

The statute in effect at the time of sentencing, 18 U.S.C. S 3663A,2 was enacted as part of the Antiterrorism and

_____

2. Section 3663A, entitled "Mandatory restitution to victims of certain crimes," states in relevant part:

> (a)(1) Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate.

> (2) For the purposes of this section, the term"victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

> . . . .

> (c)(1) This section shall apply in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense—

> (A) that is—

>  (i) a crime of violence, as defined in secti on 16;

>  (ii) an offense against property under this ti tle, including any offense committed by fraud or deceit; or

>  (iii) an offense described in section 1365 (re lating to tampering with consumer products); and

> (B) in which an identifiable victim or victims h as suffered a physical injury or pecuniary loss.

> (2) In the case of a plea agreement that does not result in a conviction for an offense described in paragraph (1), this section

shall apply only if the plea specifically states that an offense listed under such paragraph gave rise to the plea agreement.

6

Effective Death Penalty Act of 1996. See Mandatory Victims Restitution Act of 1996, Pub. L. No. 104-132, tit. II, subtit. A, S 204(a), 110 Stat. 1214, 1227-29 (1996). Unlike its companion provision at 18 U.S.C. S 3663, this section mandates restitution for certain crimes, such as property offenses committed by fraud or deceit. 18 U.S.C. S 3663A(c)(1).

The statute provides that a court "shall order . . . that the defendant make restitution to the victim of the offense." Id. S 3663A(a)(1). The term "victim" means"a person directly and proximately harmed . . . including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." Id.S 3663A(a)(2). The court shall also order restitution as provided in a plea agreement, even to "persons other than the victim of the offense." Id. S 3663A(a)(3).3

The critical references in the statutory text are to"victim of the offense" and to "an offense that involves as an element a . . . conspiracy, . . . any person directly harmed

_____

     (3) This section shall not apply in the case of an offense described in paragraph (1)(A)(ii) if the court finds, from facts on the record, that--

     (A) the number of identifiable victims is so lar ge as to make restitution impracticable; or

     (B) determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

3. Restitution is limited to amounts "directly caused by the conduct composing the offense of conviction," or those amounts that defendant "expressly agree[s] to" pursuant to the plea agreement. United States v. Silkowski, 32 F.3d 682, 689 (2d Cir. 1994). Here, the plea agreement merely indicates that the sentencing judge "will order [defendant] to pay restitution." It does not specify any victims or amounts. Thus, the scope of restitution must be found by looking to the authority granted by the statute.

by the defendant's criminal conduct in the course of the
. . . conspiracy." The issue here is how this language,
virtually identical to the corresponding portions of section
3663, is to be construed. Accordingly, we look to the case
law that construes either section 3663 or 3663A.

In addition to Hughey II, other opinions have also
discussed temporal concerns. In DeSalvo, the Court of
Appeals for the Ninth Circuit read an indictment's temporal
limits narrowly, to prevent "vague allegations" from
supporting restitution "based upon broad, unsubstantiated
conduct." 41 F.3d at 515 (internal quotes omitted). In
United States v. Pepper, 51 F.3d 469, 473 (5th Cir. 1995),
the Court of Appeals for the Fifth Circuit held that the
dates specified in the indictment, together with a
description of the unlawful conduct, was "specific enough
to satisfy" Hughey I. Other courts have held to the same
effect. See, e.g., Hensley, 91 F.3d at 277–78 (looking to
"duration" and "timing" of the offense of conviction); United
States v. Silkowski, 32 F.3d 682, 689 (2d Cir. 1994) (losses
"directly caused by conduct within the temporal limits of
the offense of conviction"); United States v. Hayes, 32 F.3d
171, 173 (5th Cir. 1994) (no restitution for losses incurred
in period before date of offense of conviction); United States
v. Langer, 962 F.2d 592, 601 (7th Cir. 1992) (indictment
described "specific dates").

Even in cases where temporal matters were not at issue,
courts have held that a defendant may not be ordered to
pay restitution for losses unrelated to the acts for which he
was convicted. United States v. Upton, 91 F.3d 677, 686
(5th Cir. 1996); United States v. Henoud, 81 F.3d 484, 488
(4th Cir. 1996). The conduct underlying the offense of
conviction thus stakes out the boundaries of the
restitutionary authority.

In sum, the "offense of conviction," as defined by Hughey
I, remains the reference point for classifying conduct that
determines liability for restitution. Although the
amendment expanded the breadth of the definition of
victims, the text did not extend the length of the period
attributable to the offense of conviction. We therefore find
ourselves in agreement with the Hughey II Court that the

offense of conviction is temporally defined by the period specified in the indictment or information.

The government suggests that even if the defendant's conduct is not within the scope of the offense as described by Hughey I, the conduct challenged here is within the ambit of the 1990 amendments. That argument misses the mark. The amendment enlarged the group of victims who would be entitled to restitution, but the triggering event -- the offense of conviction -- remains the same. United States v. Welsand, 23 F.3d 205, 207 (8th Cir. 1994) (the amendment "does not explicitly extend the contours of the word `offense' ").

Although victims need not be specifically named in the indictment or at trial, their harm must still be directly and proximately caused by the criminal conduct that is established by the prosecution. As the 1990 House Report made clear, restitution was authorized only for "a victim of the offense for which the defendant has been convicted." H.R. Rep. No. 101-681(I), at 177, reprinted in 1990 U.S.C.C.A.N. 6472, 6583. As stated in a later Senate Report accompanying the enactment of section 3663A, restitution is to be ordered where the loss was "directly and proximately caused by the course of conduct under the count or counts for which the offender is convicted." Sen. Rep. No. 104-179, at 19, reprinted in 1996 U.S.C.C.A.N. 924, 932. Congress did not want sentencing to become a forum for determination of issues better suited to civil proceedings. Id. at 18, reprinted in 1996 U.S.C.C.A.N. 924, 931.

Trying another tack, the government notes that the Information used the phrase "on or about" in setting out the time when the conspiracy commenced. According to this theory, inserting the qualification stretches the edges of the Information timeline so that it encompasses the two transactions in question. We recognize that in other settings, some variance in proof at trial from the date stated in an indictment has been permitted where qualified by a phrase such as "on or about." United States v. Somers, 496 F.2d 723, 743-46 (3d Cir. 1974). But even in those situations, such variances may not be allowed to the defendant's actual prejudice. Id. at 744 (citing Berger v.

United States, 295 U.S. 78 (1935), and Kotteakos v. United States, 328 U.S. 750 (1946)). Cf. United States v. Critchley, 353 F.2d 358, 362 (3d Cir. 1965).

Further, although the government cites opinions giving an expansive scope to the amorphous qualifier"on or about," these cases generally involve attacks on the sufficiency of the evidence or indictment, and not challenges to restitution. See, e.g., United States v. Charley, 189 F.3d 1251, 1272–73 (10th Cir. 1999).

Because the government "has control over the drafting" of the Information, it bears the burden of "includ[ing] language sufficient to cover all acts for which it will seek restitution." DeSalvo, 41 F.3d at 514. Here, the prosecution offers "no justification for its failure to specifically allege" the November incidents in the Information, nor demonstrates that the phrase "on or about" evinces an intent to cover such conduct. Id. Whatever might be the result in cases where the events were closer in time than a month, under the circumstances now before us, we are not persuaded by the "on or about" argument.

We are therefore left with the question of what was the "offense of conviction." Because the conviction here was the result of a plea bargain rather than the product of a jury verdict, we look to the plea agreement and colloquy. United States v. Broughton–Jones, 71 F.3d 1143, 1148 (4th Cir. 1995); Silkowski, 32 F.3d at 689.

The plea agreement contains a merger clause, but nothing there indicates that the "on or about" language in the Information extends so far back as to embrace the November incidents. In the document filed with the District Court on the same day as the plea agreement, defendant stated that "the substance" of the charge and plea agreement was for a conspiracy "from 12/31/97 to 7/8/98." Nowhere in this document, a supplement to the plea colloquy, did she admit to any criminal conduct occurring before December 31, 1997.

In addressing defendant at the plea colloquy, the district judge asked the following questions, in order "for the court to trace the facts to see that they meet the essential

10

elements of the offense charged in the Information."
Defendant answered all queries in the affirmative.

> - "In late 1997, did you agree with [co-defendants]
> that the three of you would use stolen credit card
> account numbers . . . to obtain cash advances and
> merchandise to which none of you were entitled?"

> - "On or about December 31, 1997, did you obtain
> the stolen . . . credit card in the name of Mary
> Breusch?"

> - "On or before December 31, 1997, did you also
> obtain a fraudulent New Jersey driver's license in
> the name of Mary Breusch . . . ?"

> - "On or about December 31, 1997, did you use the
> stolen Mary Breusch credit card along with the . . .
> license to obtain two cash advances . . . one at . ..
> Fleet Bank . . . the other at Corestates Bank . . . ?"

> - "On or about January 7, 1998, did you go to Bailey,
> Banks and Biddle . . . ?"

> - "Did you [and co-defendants] use various stolen
> credit cards and matching identification documents
> to obtain other cash advances and merchandise?"

The earliest specific date mentioned during these
exchanges was more than a month after the November
incidents. The district judge's only other temporal
references, to "on or about," "on or before," and "late 1997,"
are too vague in the context of restitution. "[A] defendant
cannot enter a voluntary and knowing plea to a specific
offense of conviction at the time of the plea allocution and
then wait to have the offense of conviction determined
afterwards at sentencing." Silkowski, 32 F.3d at 690 n.2.

These exchanges, in short, do not meet the test of
specificity necessary to stretch the offense of conviction
from December 31, 1997, as stated in the Information, as
far back as November 20 and 27, 1997. The government
framed the Information to charge conduct that began on
December 31, 1997, and it is bound by its choice to do so.

Trying to broaden the conspiracy, the government points
toward facts that show ties between the November incidents

11

and the December activity. The prosecution suggests that these facts show that the conspiracy embraced these earlier events. Although those incidents might be relevant for other sentencing purposes under the Guidelines, restitution is determined only by statutory provisions, such as 18 U.S.C. SS 3663 and 3663A. U.S.S.G. S 5E1.1(a)(1).

Although judges normally may use any information they possess to enhance a sentence, "restitution is a special case," because the statutes limit restitution to the losses caused by the offense of conviction. United States v. Kane, 944 F.2d 1406, 1415 n.7 (7th Cir. 1991); see also Silkowski, 32 F.3d at 688 ("different considerations" govern the scope of conduct relevant to restitution, in contrast to the scope of the relevant conduct provision in the Guidelines). Accordingly, because we look only to the "specific conduct" supporting the offense of conviction, the mere fact that the November events may be "factua[lly] connect[ed]" to the later conspiracy does not make them legally relevant. Broughton-Jones, 71 F.3d at 1148-49; see also United States v. Jewett, 978 F.2d 248, 252 (6th Cir. 1992) ("Acts other than [those] described in a count of conviction, even when committed during the course of or in furtherance of the same fraudulent scheme, do not state independent `offenses of conviction.' ").

The government had the opportunity to amend the Information to include the November 1997 incidents. See Fed. R. Crim. P. 7(e). Because those events were not mentioned in the Information or during the plea colloquy, they may not be considered after the fact to be part of the defendant's offense of conviction. Kones, 77 F.3d at 69. In light of all these circumstances, the restitution order should not have included the sum of $14,100 for the two November 1997 incidents.

Accordingly, this case will be remanded for appropriate modification of the order of restitution. In all other respects, the judgment of the District Court will remain undisturbed.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

12