UNITED STATES of America

v.

**John Gregory LYNCH, Appellant.**

No. 08–1973.

United States Court of Appeals, Third Circuit.

Argued May 11, 2009.

Opinion filed Sept. 16, 2009.

---

Curtis Farber, Esquire (Argued), New York, NY, for Appellant.

Ralph J. Marra, Jr., Acting United States Attorney, George S. Leone, Chief, Appeals Division, Jennifer H. Chin (Argued), Assistant U.S. Attorney, Office of the United States Attorney, Newark, NJ, for Appellee.

Before: AMBRO, ROTH and ALARCÓN *, Circuit Judges.

OPINION

AMBRO, Circuit Judge.

John Gregory Lynch appeals the sentence imposed on him by the District Court after he pled guilty to conspiring to employ a prohibited person, contrary to 29 U.S.C. § 1111(a)–(b) and in violation of 18 U.S.C. § 371. He claims that the Court erred in (1) enhancing his sentence based on his abuse of a position of trust and participation in an embezzlement scheme, and (2) increasing his amount of restitution. We affirm the Court's sentence enhancements, but vacate its increased restitution order.

I.

From 1999 until 2002, Lynch served as legal counsel to the Professional Employee's Guild ("PEG"), advising it on various matters, including maintenance of its employee welfare benefit plan. He also acted from 1999 until 2005 as the PEG's exclusive insurance broker, negotiating coverage rates for its members.

As the PEG's attorney and broker, Lynch committed two wrongs. First, he paid Jack Kramer $70,260 for consulting services rendered to the PEG even though he knew Kramer had a prior embezzlement conviction that barred him from working with a union or employee benefit

* Honorable Arthur L. Alarcón, Senior United States Circuit Judge for the Ninth Circuit Court of Appeals, sitting by designation.

plan. Second, Lynch conspired with Kramer and Joseph Crompton, the secretary and treasurer of the PEG, to embezzle funds from the PEG through payment of fictitious administrative services fees. To further this conspiracy, Lynch drafted a fraudulent letter, which included the forged signature of an insurance company representative, directing the PEG to pay him $296,000 in fees. He then deposited this sum in a personal account and later transferred it to Kramer.

In 2006, federal authorities charged Lynch with one count of conspiring to employ a prohibited person, and one count of conspiring to embezzle funds from a labor organization. After negotiations, Lynch agreed to plead guilty to the count of conspiracy to employ a prohibited person.

Lynch's plea agreement assigned him a Sentencing Guidelines calculation of 12, using a base offense level of 6 and assigning an 8–level increase for losses in excess of $70,000 and a 2–level reduction for acceptance of responsibility. *See* U.S.S.G. §§ 2B1.1(b)(1)(E) & 3E1.1(a). The agreement also committed him to pay $70,260 in restitution.

Before Lynch appeared for sentencing, the United States Probation Office prepared a presentence report. The report recommended a 12–level increase in Lynch's base offense level, instead of the 8–level increase agreed to in the plea agreement, because his embezzlement of PEG funds was "relevant conduct" that increased the amount of loss from his crimes to more than $200,000 and triggered U.S.S.G. § 2B1.1(b)(1)(G). The Probation Office also recommended a 2–level increase under U.S.S.G. § 3B1.3 for Lynch's abuse of a position of trust and a 1–level reduction under U.S.S.G. § 3E1.1(b) for his timely notification of intent to plead guilty. In sum, it advised assigning Lynch a total offense level of 17

and a criminal history category of I, yielding a Sentencing Guidelines range of 24 to 30 months' imprisonment. It also suggested that Lynch pay restitution of $366,000 to cover the $296,000 he embezzled as well as the over $70,000 he paid to Kramer.

The District Court largely accepted the recommendations of the Probation Office. After considering Lynch's objections to the presentence report and the sentencing factors set out in 18 U.S.C. § 3553(a), it sentenced Lynch to 24 months' imprisonment, at the bottom of the Guidelines range, and ordered him to pay $296,000 in restitution. In doing so, it considered Lynch's embezzlement activities as relevant conduct and ruled that Lynch had abused a position of trust within the PEG.

Lynch responded by moving for a sentence correction pursuant to Federal Rule of Criminal Procedure 35. He claimed that the Court had not adequately addressed the sentencing factors of 18 U.S.C. § 3553(a) or the applicability of U.S.S.G. § 5K2.20, which permits a downward departure from the sentencing range for aberrant behavior. At a hearing on his motion, Lynch further claimed that the PEG was a "sham union," that he legitimately earned the $296,000 in fees paid on the forged letter, and that he deserved a separate hearing to challenge the Court's amount of loss ruling. The Court denied Lynch's motion. He now appeals.

II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

We review *de novo* the District Court's interpretation of the Sentencing Guidelines and consider findings of fact for clear error. *See United States v. Wood,* 526 F.3d 82, 85 (3d Cir.2008). We review the substantive reasonableness of the Court's as-

signed sentence for abuse of discretion. *Id.*

## III.

Lynch claims that the District Court erred in: (1) enhancing his sentence on the basis of the amount of loss related to his charged embezzlement offense; (2) increasing his sentence because he abused a position of trust; and (3) ordering him to pay an amount of restitution greater than that stated in his plea agreement. We reject Lynch's claims that the Court misapplied sentence enhancements for amount of loss and abuse of a position of trust, but we agree that he should not owe more in restitution than the loss agreed to in his plea agreement.

## A.

■ Amount of loss is a "specific offense characteristic" for property offenses determined on the basis of the harm caused by the defendant's "relevant conduct." U.S.S.G. §§ 1B1.3(a) & 2B1.1(b)(1). Relevant conduct includes "all acts ... committed by the defendant ... that occurred during commission of the offense of conviction" and "all harm that results from [such] acts." *Id.* at § 1B1.3(a)(1)–(3). For "offenses ... requir[ing] grouping of multiple counts," relevant conduct also includes "all acts ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* at §§ 1B1.3(a)(2) & 3D1.2(d). Relevant conduct is established by a preponderance of the evidence, *see United States v. Grier,* 475 F.3d 556, 568 (3d Cir.2007) *(en banc),* and may be "[c]onduct that is not formally charged or is not an element of the offense of conviction." U.S.S.G. § 1B1.3 cmt. background; *see also United States v. Tidwell,* 521 F.3d 236, 250 n. 9 (3d Cir.2008).

Lynch contends that the District Court erred by considering as relevant conduct his receipt of $296,000 in fees from the PEG. He specifically claims that the Court

failed to find by a preponderance of the evidence that, in seeking and accepting the $296,000 in fees, he "acted knowingly, willfully, unlawfully, and with fraudulent intent to deprive [the] PEG of its money." Lynch's Br. at 14 (internal citations omitted). He also asserts that the Court improperly denied him a hearing to show his innocence on the embezzlement charge. He is wrong on all points.

The District Court explained at the sentencing hearing why Lynch's receipt of the $296,000 was relevant conduct:

> [An offense] level of 17 is ... reflected in th[e presentence] report. I find ... that that is the appropriate level, and I say that for several reasons. Specifically, one of the issues that's raised is whether that was the amount of loss. The amount of loss, certainly with regard to count two of the indictment, was the $71,000 paid to Mr. Kramer. ... But in the first count of the complaint of the indictment, it discusses the $296,000 that was obtained. And the reason that I find that that has to be considered as relevant conduct under the sentencing guidelines ... is because in looking at the presentence report, and in particular paragraph 21, it goes into some further detail as to how this $296,000 was obtained. And that is the part that was extremely troubling for the [C]ourt.

App. at 63–65. The Court also rejected Lynch's assertion that he did not accept the fees unlawfully because the PEG was a "sham union":

> [Y]ou cannot come in and argue after the fact that it's not a real, legitimate union. It's a family. It was no big deal. Nobody was hurt. It doesn't make the offense less offensive because you thought it was a family organization. ... The conduct is what is being punished, and that is what I felt was appropriate.

*Id.* at 92–94. These passages indicate that the Court believed a preponderance of the evidence established that Lynch's acquisition of the $296,000 in fees was relevant conduct for sentencing purposes.

The Court's adoption of the presentence report's characterization of the $296,000 fee payment as relevant conduct also was justified by Lynch's ineffectual objection to it. "The party challenging the [presentence] report ... has the burden of production, under Rule 32(c), to come forward with evidence that tends to indicate that the report is incorrect or incomplete." *United States v. McDowell,* 888 F.2d 285, 291 n. 1 (3d Cir.1989); *see also United States v. Jimenez,* 513 F.3d 62, 86 (3d Cir.2008). Lynch failed to carry this burden when he stated prior to sentencing merely that he had "a difference of opinion" concerning the legality of the $296,000 fee payment and offered no evidence to rebut the embezzlement charge stemming from it. *Cf. United States v. Artley,* 489 F.3d 813, 821 (7th Cir.2007) ("When a defendant has failed to produce any evidence calling the report's accuracy into question, a district court may rely entirely on the presentence report.").

Lynch's faulty objection to the presentence report also was not curable through his postsentence Rule 35 motion or his evidentiary hearing request. A court's "authority to correct a sentence under Rule 35(a) was intended to be very narrow and extends only to those cases where an obvious error has occurred in the sentence." *United States v. Washington,* 549 F.3d 905, 915 (3d Cir.2008). It does not permit the reevaluation of factual determinations based on new objections. Moreover, because Lynch did not request an evidentiary hearing for his relevant conduct determination until after sentencing, he waived his claim to any such right. *See United States v. Matthews,* 773 F.2d 48, 51 (3d Cir.1985) (holding that where a "defendant has an adequate opportunity to examine and correct controverted information and request an evidentiary hearing," but fails to do so before sentencing, "the error is counsel's[,] not the court's").

### B.

■ Lynch also argues that the District Court's 2–level enhancement for abuse of a position of trust erred because "he did not abuse the trust of PEG members, but had instead worked to provide them with all that they had bargained for." Lynch's Br. at 13. In reviewing this issue, we have no doubt that Lynch "abused a position of trust in a manner that significantly facilitated the commission or concealment of [his] offense." U.S.S.G. § 3B1.3.

His role as counsel and insurance broker to the PEG placed Lynch in a "position of trust" because it allowed him to "commit a difficult to detect wrong" by using his degree of authority at the PEG and its members' reliance on his integrity. *United States v. Hoffecker,* 530 F.3d 137, 201 (3d Cir.2008); *see also* U.S.S.G. § 3B1.3 n. 5(A) (noting that a person holds a position of trust in a benefit plan if he "exercises any discretionary authority or control in respect to the management of such plan"). Lynch "abused that trust in a way that significantly facilitated his crime" by paying Kramer for services that Kramer was prohibited from providing and by embezzling funds from PEG's holdings. *United States v. Sherman,* 160 F.3d 967, 969 (3d Cir.1998).

### C.

■ Lynch's final assertion is that the District Court committed plain error in assessing a restitution award of $296,000 in contravention of his plea agreement and based only on his relevant conduct. Plain error is the appropriate standard of review because Lynch failed to preserve his objection to the Court's restitution order. *See*

*United States v. Olano,* 507 U.S. 725, 731–33, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

The Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A, states that "[t]he court shall order … restitution to the victim of the offense … [and], if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense." Under this statute, restitution is allowable "only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey v. United States,* 495 U.S. 411, 420, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990); *see also United States v. Akande,* 200 F.3d 136, 138 (3d Cir.1999) ("The conduct underlying the offense of conviction … stakes out the boundaries of the restitutionary authority."). Where, as here, the conviction is the result of a plea agreement, "we look to the plea agreement and colloquy" to determine what is the "offense of conviction." *Akande,* 200 F.3d at 142.

Lynch's plea agreement describes his offense as "conspiracy to employ a prohibited person" and notes that "Lynch agrees to make full restitution for losses resulting from the offense of conviction or from the scheme, conspiracy, or pattern of criminal activity underlying that offense, to the Professional Employees Guild Welfare Fund in the amount of $70,260." App. at 29. The Government argues that these terms are broad enough to authorize the District Court's restitution order. It specifically claims that, by passing the $296,000 onto Kramer, Lynch brought his charged embezzlement conduct within "the scheme, conspiracy, or pattern of criminal activity underlying [his] offense." *See* Gov't's Br. at 39.

We do not read the plea agreement so broadly. "Although judges normally may use any information they possess to enhance a sentence, 'restitution is a special case,' because the statutes limit the losses caused by the offense of conviction."

*Akande,* 200 F.3d at 143 (quoting *United States v. Kane,* 944 F.2d 1406, 1415 n. 7 (7th Cir.1991)). In this case, the offense of conviction was the illegal employment of Kramer as a consultant, and the plea agreement unambiguously sets the "full restitution" amount at $70,260. App. at 29. Thus, even though Lynch's passing of the $296,000 in fraudulent fees to Kramer may be "factually connected" to his conspiracy to employ Kramer, it is not here (where a plea agreement sets the amount of restitution loss) legally relevant for purposes of the restitution order.

However, that the District Court erred in ordering Lynch to pay $296,000 in restitution—as opposed to the $70,260 stipulated to in the plea—is not itself enough for us to vacate the Court's restitution order. Because Lynch failed to object to the order, we can only grant that relief if we believe that the error was plain and that it adversely affected both Lynch's "substantial rights" as well as the "fairness, integrity, or public reputation of [the] judicial proceedings." *United States v. Polk,* 577 F.3d 515 (3d Cir.2009).

That standard is met in this case. The Court's error was plain because, as explained above, § 3663A only allows restitution to persons other than the victims of the offense of conviction "if agreed to by the parties in a plea agreement," and the plea agreement plainly did not contemplate a restitution award beyond the $70,260 associated with the offense of conviction. That error affected Lynch's "substantial rights" in that it resulted in his being subject to a much higher restitution amount. *See United States v. Evans,* 155 F.3d 245, 251 (3d Cir.1998) (explaining that, "[i]n most cases, an error affects substantial rights if it is prejudicial"). And, finally, insofar as the error resulted in a sentencing order "not authorized by law," it also "seriously affect[ed] the fair-

ness, integrity, and reputation of the proceedings." *Id.* at 252. Thus, Lynch is entitled to the relief requested despite failing to preserve the objection.

\*　　\*　　\*　　\*　　\*　　\*

Lynch "lost [his] path" and engaged in "something that all stems from greed." *Id.* at 65. He violated the trust placed in him by PEG members and pursued a course of action that he knew was wrong. We accordingly hold that the District Court's sentence enhancements for amount of loss from relevant conduct and abuse of a position of trust were appropriate and reasonable. Because the Court's restitution order required payment for acts beyond the specific conduct supporting the offense of conviction, we vacate it and remand with instructions to enter a new restitution order covering only the $70,260 stipulated to in the plea agreement.