**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-30167 |
| Plaintiff - Appellee, | D.C. No. 2:11-cr-00011-DWM-1 |
| v. | |
| ELIZABETH P. JOHNSON, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted July 10, 2013
Portland, Oregon

Before: PREGERSON, MURGUIA, and CHRISTEN, Circuit Judges.

Elizabeth Johnson pled guilty to one count of wire fraud in violation of 18

U.S.C. § 1343, and one count of money laundering in violation of 18 U.S.C. §

1957. For the purpose of sentencing, the district court calculated the loss caused

by Johnson's fraud at $1,329,670.34, increasing Johnson's total offense level by 16

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

levels under the Sentencing Guidelines. *See* U.S.S.G. § 2B1.1(b)(1). The district court sentenced Johnson to 34 months imprisonment and ordered her to pay restitution in the amount of $1,569,770.34. Johnson appeals her sentence. We have jurisdiction. 18 U.S.C. § 3742(a); 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand.

**1.** Johnson first contends that the district court committed clear error by failing to deduct from $1,329,670.34, the total loss caused by her fraud, the $484,271.13 that Johnson spent discharging mortgages on the piece of Wyoming property around which the fraud revolved. *See United States v. Laurienti*, 611 F.3d 530, 558 (9th Cir. 2010) (noting that we review for clear error a district court's loss calculation under the Sentencing Guidelines). Johnson argues that by discharging those mortgages, she increased the value of the land to the benefit of her fraud's victims, who are now in possession of the land. Johnson's argument lacks merit, because when the district court eventually deducted the Wyoming property's fair market value from Johnson's loss amount, the court's estimate of the land's value necessarily accounted for the fact that it was unencumbered. Johnson's discharge of the encumbrances on the property, which included debts unrelated to the development of the property, did not benefit the victims in any amount greater than the fair market value of the property for which Johnson received credit.

**2.**     Johnson next contends that the district court clearly erred by declining to deduct from the loss amount $51,000 spent paying consultants to generate pitch materials for investment in a resort to be built on the aforementioned property. The Sentencing Guidelines allow for the deduction of "the fair market value of . . . the services rendered . . . by the defendant or other persons acting jointly with the defendant . . . to the victim before the offense was detected."  U.S.S.G. § 2B1.1 Application Note 3(E)(i).  Here, there was evidence that the consultants provided little to nothing of value to the victims of Johnson's fraud.  The district court therefore did not clearly err in refusing to deduct the $51,000 from its total loss calculation.

**3.**     Next, Johnson argues that the district court clearly erred when it estimated the value of the Wyoming property at $300,000, which it deducted from her total loss amount.  *See* U.S.S.G. § 2B1.1 Application Note 3(E)(ii) (directing a sentencing court to deduct the value of collateral pledged to the victim of a fraud by its perpetrator).  The district court extrapolated from a few data points (including the $265,000 Johnson herself paid for the property) in making an estimate of the property's value, which we have noted frequently need only be that—an estimate.  *Laurienti*, 611 F.3d at 558.  We cannot say that the value upon which the court settled, $300,000, is so wildly incorrect as to "strike us as wrong

3

with the force of a five-week-old, unrefrigerated dead fish." *United States v. Bussell*, 504 F.3d 956, 962 (9th Cir. 2007) (internal citation and quotation marks omitted).

**4.** Johnson turns to the district court's restitution order, contending that as with the loss amount, it should be decreased by the $484,271.13 she paid to discharge the mortgages on the Wyoming property. We reject this argument for the same reasons we rejected it as to the district court's calculation of Johnson's loss amount.

Johnson also argues that the district court erred in its restitution order by undervaluing the Wyoming property and by using the valuation date appropriate for calculating the loss amount for purposes of sentencing—*i.e.*, the date of sentencing—rather than the valuation date appropriate for the purposes of restitution—*i.e.*, the date of foreclosure. *See United States v. Davoudi*, 172 F.3d 1130, 1134 (9th Cir. 1999) (holding that the district court erred as to calculating restitution, but not offense level, by applying the fair market value at the date of sale rather than the date of foreclosure). The district court was silent as to which valuation date it used for restitution, but it adopted the same $300,000 value it used in its loss amount calculation. We conclude that any error in not articulating that two different valuation dates were used was harmless, because the $300,000 value

at the time of the 2008 foreclosure was reasonable given the 2006 purchase price and the testimony regarding offers to purchase the property for between $200,000 and $300,000 prior to 2009–10.[1]

5.    Finally, Johnson argues that the district court erred in ordering her to pay restitution to a member of her church, who told the probation officer preparing Johnson's presentence report that Johnson had defrauded her of a $100,000 investment made in connection with the Wyoming property.  Johnson, however, may only be required to pay restitution to the victims of the offenses of which she was convicted.  18 U.S.C. § 3663A; *see Hughey v. United States*, 495 U.S. 411, 422 (1990) ("Petitioner pleaded guilty only to the charge that he fraudulently used the credit card of Hershey Godfrey.  Because the restitution order encompassed losses stemming from alleged fraudulent uses of cards issued to persons other than Godfrey, such portions of the order are invalid."), *abrogation-in-part recognized by United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 927 n.10 (9th Cir. 2001) (noting that the *Hughey* rule, limiting restitution only to losses caused by the offense of conviction, has been abrogated for offenses involving a scheme, conspiracy, or pattern of conduct).  Johnson pled guilty to committing wire fraud

------

[1] The district court did not receive evidence establishing that the valuation at the time of the 2012 sentencing was appreciably different than it was in 2008.

by faxing a fake contract to a specific out-of-state investor, duping him into co-signing a loan to develop the Wyoming property.  Johnson also pled guilty to laundering some of the proceeds of that loan.  Neither of those offenses, as charged in the indictment to which Johnson pled guilty, is broad enough to cover the allegation that Johnson defrauded a fellow church member in Montana.  Consequently, we must remand for the district court to reduce Johnson's restitution accordingly.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**